**In re ROYSTER COMPANY, et al., Debtor.**

**Bankruptcy Nos. 91–7012– 8P1 to 91–7014–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 29, 1992.

William J. Rochelle, Fulbright & Jaworski, New York City, John K. Olson, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, Tampa, Fla., for debtor.

Mark D. Silverschotz, Anderson, Kill, Olick & Oshinsky, New York City, Jeffrey Warren, Bush, Ross, Gardner, Warren & Rudy, Tampa, Fla., for Official Committee of Unsecured Creditors.

ORDER ON MOTION OF GATX TO SET DEADLINE FOR DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case, and the matter under consideration is a Motion filed by General American Transportation Corporation (GATX) seeking a deadline for Royster Company (Debtor), a fertilizer manufacturer and distributor currently attempting to achieve a reorganization of its financial affairs under Chapter 11 of the Bankruptcy Code, to assume or reject a Car Service Contract between GATX and the Debtor.

In opposition to the Motion, the Debtor claims that its Car Service Contract with GATX is not a single, integrated contract, but instead consists of several independent contracts. Therefore, the Debtor contends it is entitled to select which of the several contracts to assume or reject. In due course, the Court scheduled the Motion for hearing and on December 5, 1991, entered an Order which granted GATX's Motion, but reserved ruling on the issue raised by the Debtor regarding the severability of the Car Service Contract and its various Riders. The Order provided in pertinent part that the Debtor shall file a motion to assume or reject the Car Service Contract within 15 days of the date this Court's Order resolving the issues raised by the Debtor becomes final.

Upon consideration of the undisputed record, the Court now finds and concludes as follows:

The Debtor and its affiliated entities are some of the nation's major producers and distributors of phosphate fertilizers and related products designed to service not only the domestic, but also the export markets. The Debtor's principal facilities include a plant located in Mulberry, Florida (Mulberry Plant), producing diammonium phosphate (DAP), a principal ingredient of phosphate fertilizers. Sulphur and sulfuric acid are raw materials used in the production of DAP. In order to transport the sulfur and sulfuric acid, on February 23, 1987, the Debtor and GATX entered into the Car Service Contract. In connection with this Contract, the Debtor and GATX entered into 11 separate, consecutively numbered riders (Riders) for the lease of railroad cars and related items from GATX.

These Riders were entered into based on the changing needs of the Debtor, and thus the Riders were executed on different dates and were separately negotiated. Each Rider governs the lease of specific railroad cars and specifies a monthly service charge and duration. The railroad cars involved, their respective rental rates, and the duration of their lease varies from Rider to Rider. Although the Riders state that each Rider "shall become a part of the Car Service Contract," the Debtor's obligations under each Rider are not expressly related to the Debtor's performance under any other Rider or the Car Service Contract. However, paragraph 13 of the Car Service Contract provides that if the Debtor defaults under the Car Service Contract, GATX may terminate the Contract with respect to any or all of the leased railroad cars.

Several Riders that the Debtor executed with GATX have expired over the course of the years. Other Riders are still in effect. For example, the Debtor currently leases 22 Sulphur Cars pursuant to Rider No. 11 for a monthly service charge of $475.00 per railroad car, or a total monthly payment of $10,450.00. Rider No. 11 commenced on or about December 28, 1990 and has a three-year term that ends on December 31, 1993. Until June 1991, the Debtor also leased 20 Sulfuric Acid Cars pursuant to Rider No. 8 for a monthly service charge of $485.00 per car, or a total monthly payment of approximately $9,700.00. Rider No. 8 commenced on or about November 17, 1988 for a five year term. However, during June, 1991 the Debtor returned all 20 Sulfuric Acid Cars to GATX in connection with the parties' efforts to renegotiate the terms of the Riders and discontinued payment of the monthly service charge for the returned sulphur cars.

In addition, the Debtor leased another 67 Sulphur Cars under two Riders, Nos. 9 and 10. These Riders have terminated because the time periods under which these Riders operated have expired. However, the

Debtor is continuing to lease the 67 Sulphur Cars under the terms of Riders Nos. 9 and 10 on a "month-to-month" basis, which may be terminated at will by either party.

■ Under § 365 of the Bankruptcy Code, a debtor may assume or reject executory contracts, but must assume an executory contract in toto or not at all. *In re Gardinier, Inc.*, 831 F.2d 974, 976 (11th Cir.1987). As the Debtor seeks to assume or reject only some and not all of the Riders, the question is whether the Car Service Contract and Riders constitute one single integrated contract or several separate and distinct contracts which may be assumed or rejected separately.

The two Riders at issue are Riders numbers 8 and 11, executed in November, 1988, and December, 1990, respectively, some two or three years after execution of the Car Service Contract.

■ In determining whether documents constitute one agreement, "the intention of the parties is the governing principal in contract construction." *In re Gardinier, supra.* Absent ambiguity in the terms of the contract, the parties' intent must be gleaned from the four corners of the instrument. *Id.*, at 976. The fact that the terms of a transaction are set forth in one instrument is not conclusive evidence that the parties intended to make only one contract, but is only a factor in determining intent. *Id.*, at 976.

In *Gardinier, supra,* the Eleventh Circuit Court of Appeals reversed the District Court's reversal of this Court's Order determining that a contract for sale of real estate in connection with an agreement to pay a broker's commission constituted two separate and severable agreements. In upholding this Court's determination that the two were separate contracts, the Court of Appeals considered three aspects which were persuasive evidence of the parties' intent. First, the court considered whether the nature and purpose of the documents were the same or different; second, whether the consideration for each document is separate and distinct or the same; and third, whether the obligations of each party

under the documents are inter-related or not.

As one agreement addressed the sale of real property while the other contemplated an employment contract related to the sale of the property, the consideration for each agreement was separate and distinct, and the obligations of each party to the agreement were not inter-related, the Court of Appeals concluded that the agreements were in fact separate and distinct. *See also, Wayne H. Coloney Co., Inc. v. U.S. Department of Air Force*, 89 B.R. 924 (Bankr.N.D.Fla.1988) (Supplemental agreements to original contract for manufacture and delivery of ammunition loaders and other items to U.S. Air Force constituted separate contracts, and, therefore, debtors assumption of supplemental contracts did not constitute assumption of original contract); *In re Central Florida Fuels, Inc.*, 89 B.R. 242 (Bankr.M.D.Fla.1988) (Asset purchase agreement for sale of business was severable from lease for premises where assets of the business to be purchased were located.)

■ Although the Car Service Contracts are admittedly of a different nature than the contracts involved in the *Gardinier* case, this Court is satisfied that the principles set forth in *Gardinier* support the conclusion that the Car Service Contract and the different Riders are separate contracts. As noted previously, Rider No. 11 was executed nearly three years after the Car Service Contract, and Rider No. 8 was executed nearly two years after the Car Service Contract. Each Rider contains a different monthly service charge. Thus, there is clearly separate and distinct consideration for each Rider. Further, performance under each individual Rider is not dependent or related to performance under the terms of any other Rider; thus, the obligations of the parties under each Rider are not inter-related. Neither are the parties' obligations under the Car Service Contract dependent upon performance of the terms of the individual Riders. Finally, the nature and purpose of each Rider is different because the parties entered into each Rider with the intention of leasing specific

identified railroad cars pursuant to unique price and time period terms depending on the Debtor's need. The fact that the Riders provide for the lease of similar or related equipment does not change this result.

Based on the foregoing, this Court is satisfied that the Debtor's arguments presently under consideration are well taken and the Debtor may assume or reject the Riders to the Car Service Contact on an individual basis.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Set Deadline for Debtor to Assume or Reject the Car Service Contract be, and the same is hereby, granted as set forth in this Court's Order entered December 5, 1991, and the Debtor may seek to assume or reject the Riders to the Car Service Contract as separate executory contracts.

DONE AND ORDERED.