### In re APACHE PRODUCTS COMPANY, Debtor.

#### No. 02–20896–8P1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 19, 2003.

---

W. Keith Fendrick, Foley & Lardner, Tampa, FL, for Debtor.

Lawrence Bass, Esq., Holme, Roberts & Owen, Denver, CO, for Movant.

Bart A. Houston, Adorno & Yoss, P.A., Ft. Lauderdale, FL, for Petitioning Creditors.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**(Doc. Nos. 212 & 214)**

ALEXANDER L. PASKAY, Chief Judge.

The matters under consideration in this yet to be confirmed Chapter 11 case are two motions for summary judgment one filed by Eagle Polyiso Corporation (Eagle) and the other filed by Apache Products Company (Debtor). Both Motions are directed to the ability of the Debtor to assume an unexpired lease of non-residential property located in Anderson, South Carolina.

Both Motions relate to the Debtor's original entitled "Motion of Debtor for an Order Authorizing Assumption of Unexpired Lease of Nonresidential Real Property" (Doc. No. 108), filed on December 13, 2002. The Lease sought to be assumed, entitled "Lease Agreement (Anderson, South Carolina)," is between Eagle, as the landlord and the Debtor as the tenant. Unlike most lease assumptions, which are basically uncomplicated, the issues involved in the present instance are far from being simple and uncomplicated, and cannot be resolved without considering all aspects of the parties' relationship.

For this reason, a recap of the procedural as well as the relevant factual events should be helpful for the resolution of this matter and are summarized as follows. On October 22, 2002, the Debtor filed its Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code. Prior to the commencement of this Chapter 11 case, on or about August 31, 1999, the Debtor, Eagle, and Jasper Corp. (Jasper), the parent of the Debtor, entered into an Asset Purchase Agreement (Asset Agreement) (Jt.Ex. 1). Also on August 31, 1999, the Debtor, Eagle, and Jasper entered into six other contracts, for a total of seven contracts. The other contracts are the following:

(1) Lease Agreement (Anderson, South Carolina) (Ex. A to Db. MSJ), which is the subject of this dispute;

(2) Supply Agreement (Jt.Ex. 2), between the Debtor and Eagle for the sale of product that Eagle agreed to manufacture for the Debtor, including roofing and sheathing products;

(3) Lease Agreement (Linden, New Jersey) (Jt.Ex. 3), between the Debtor as landlord and Eagle as tenant for the use of certain premises;

(4) Sublease (Jt.Ex. 4), between the Debtor as landlord and Eagle as tenant for use of certain property located in Riverside, California;

(5) Technology Agreement (Jt.Ex. 5), between the Debtor and Eagle, which is a license for certain intellectual property rights; and

(6) Escrow Agreement (Jt.Ex. 7), among Jasper, Eagle and First Union National Bank, in connection with a guarantee of performance under all of the contracts discussed above.

It is without dispute that the Debtor, pursuant to an agreement to compromise Eagle's claim against the estate, rejected the Supply Agreement. The rejection was approved by Order of this Court, entered on February 12, 2003 (Doc. No. 191). The Order specifically provided: "Nothing in this Order or in the Debtor's rejection of the Contracts herein shall affect the Debtor's ability to assume or reject any other contract with Eagle Polyiso Corporation including the Asset Purchase Agreement or the Anderson Lease Agreement which is the subject of a pending Motion to assume." Paragraph 3 of the Order. It is also without dispute that the Lease Agreement (Linden, New Jersey) terminated on its own on December 31, 2002 and that the Sublease terminated on its own on April 30, 2003.

The matter under consideration is the Debtor's request to assume the Lease Agreement with respect to the Anderson facility. As noted earlier, each party filed separate Motions for Summary Judgment, which were duly noticed and argued before this Court. The parties also filed a Joint Stipulation as to certain undisputed facts, as well as the case citing relied upon by each party. The major contention between the parties is that it is the Debtor's position that each contract is separate and therefore, can be assumed or rejected independent of the other. On the other hand, Eagle argues that the contracts entered into between Eagle and the Debtor are not separate and must be assumed *in toto* or rejected *in toto*.

Both parties agree that the operative test regarding the resolution of this matter can be found in *Byrd v. Gardinier (In re Gardinier)*, 831 F.2d 974 (11th Cir. 1987), which provides the factors for this Court to determine whether or not a debtor can assume a contract independent or whether or not the debtor must assume the other contract(s) with the same party. The three-part test is as follows: (1) what is the nature and purpose of the contracts in dispute; (2) what was the consideration of the contracts, are they separate and distinct; and (3) whether or not the obligations under the contracts are interrelated. *Gardinier*, 831 F.2d at 976.

In support of the Debtor's position that the Lease Agreement is a separate contract, the Debtor argues the three-prong test as follows. First, the Debtor asserts that the Asset Agreement and the Lease Agreement are different agreements in nature and purpose. The Asset Agreement was for the purchase of the Debtor's assets, while the Lease Agreement is a lease-back contract. Second, the Debtor argues that the considerations were different. Eagle's consideration, with respect to the Asset Agreement, was money for the Debtor's assets. The consideration by the Debtor for the Lease Agreement was: (1) $1 per year base rent, pre-paid for all ten years; (2) maintaining insurance; (3) payment of actual out-of-pocket costs for additional rent; (4) indemnification of Eagle; and (5) responsibility of the Debtor for maintenance and repair on the subject property. Finally, the Debtor argues that the contracts are not interrelated because the Asset Agreement was for the purchase

of assets and the Lease Agreement is for the Debtor's quiet enjoyment of the property, which are distinctly different.

To further support the Debtor's position, the Debtor points out that the Lease Agreement, section 8.1, "Default" does not reference any other agreement. The Debtor states that this Court must look at the four corners of the contract if it is unambiguous and in this case, each contract is unambiguous and separate. Additionally, the Debtor points out that in *Gardinier* and in the case of *In re Royster Company*, 137 B.R. 530 (Bankr.M.D.Fla. 1992), the dispute was over one contract and whether or not to extract two contracts from the one. In this instance, there are two distinct contracts as opposed to one contract, which the Debtor asserts further advances its position.

In opposition, Eagle argues that the application of the three-prong test supports a finding that the contracts are "intertwined" and not separate. First, there were a total of seven contracts entered into by Eagle and the Debtor all on August 31, 1999, with the Asset Agreement as the "umbrella" document for the sale of the Debtor's business. One must view the contracts together, they are all integrated transactions executed and consummated by the parties to sell the business. Second, Eagle would not have entered into the Asset Agreement if it could not have leased the various properties (California and South Carolina). It is not reasonable to extract separate considerations for each contract, because, for instance, Eagle would not accept a $1 base rent for each year, for a total of $10 for ten years if the Asset Agreement had not also been entered into. Third, the obligations are interrelated. For example, the Escrow Agreement dealt with performance under all of the contracts and a default by the Debtor pursuant to the Lease Agreement

would result in an indemnification claim by Eagle against the Debtor and Jasper pursuant to section 7.3(a) of the Asset Agreement. Moreover, the Lease Agreement references that Eagle assumed the Debtor's obligations under the FILOT Lease, encumbering the Anderson property, pursuant to the Asset Agreement. According to Eagle, the contracts are interrelated, have provisions that reference each other and therefore, must be treated *in toto*.

In further support of its contention, Eagle contends that in the case of *Clayton v. Howard Johnson Franchise Systems, Inc.*, 954 F.2d 645 (11th Cir.1992), the court concluded that a motel and restaurant lease were functionally intertwined and could not be separated. Eagle distinguished *Royster*, by pointing out that that was a railroad case which dealt with an initial contract and subsequent riders, entered into on separate dates.

These are the salient facts upon which each party asserts that they are entitled to summary judgment in their favor and against the other party. Unfortunately, the facts as presented do not provide a clear picture of the parties' intent at the time they entered into the contracts. Out of the seven contracts entered into, two terminated on their own, which were the other landlord/tenant agreements and the supply agreement was rejected by the Debtor, apparently not objected to by Eagle, and ultimately approved by this Court. That leaves for consideration the Asset Agreement, the Lease Agreement that is the subject of this dispute, the Technology Agreement, and the Escrow Agreement, or four of the seven contracts as the operative contracts between the parties. Although not discussed in the Joint Stipulation, it appears that the Escrow Agreement has not terminated, as the Debtor has certain environmental clean-up issues with respect to the Linden

Facility that remain ongoing, although the record is somewhat unclear. And, it appears that if the Debtor rejects the Technology Agreement, Eagle would still retain the intellectual property. 11 U.S.C. § 365(n)(1).

This Court is satisfied that the facts as presented are in equilibrium, meaning that the facts could support either position. Although the agreements do not have cross-default language, there is an indemnification provision in the Asset Agreement. Although most of the contracts do not reference each other, the Escrow Agreement does make reference to the agreements. Likewise, it would seem bizarre business practice that on its own terms, without the Asset Agreement, Eagle would lease to the Debtor significant real property for $1 a year.

Accordingly, this Court is satisfied that it is necessary to conduct a limited final evidentiary hearing on the issue of the intent of the parties in light of the three factors as espoused in *Gardinier.*

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motions for Summary Judgment be, and the same are hereby, denied. It is further

ORDERED, ADJUDGED AND DE-CREED that a pre-trial conference shall be scheduled on June 10, 2003, beginning at 10:30 a.m. at Courtroom 9A, Sam M. Gibbons United States Courthouse, 801 N. Florida Ave., Tampa, Florida, to consider any additional motions and to set the trial date.