KRAVITCH, Circuit Judge:
 

 The issue in this bankruptcy case is whether an agreement to pay a brokerage commission, contained within the same document as a purchase and sale agreement, is a separate and distinct contract from the purchase and sale agreement. The district court, reversing the bankruptcy court, held that the agreements were not separate and distinct. We reverse the district court.
 

 I. BACKGROUND
 

 On February 11, 1985, the debtor, Gardi-nier, Inc., filed a voluntary petition for reorganization relief under Chapter 11 of the Bankruptcy Code. Before filing its petition, Gardinier had agreed to sell a parcel of land known as the Goldstein tract to Boyd Burley. The terms and conditions of the purchase and sale agreement were memorialized in an instrument entitled “Contract for Sale of Real Estate.” The purchase price for the Goldstein tract was $5,117,000, and the earnest money deposit was $100,000. In paragraph eight of the
 
 *975
 
 contract, Gardinier agreed to pay the broker, Kilgore Real Estate, a 10% commission for its “services in making sale of said property ... at the time of closing this transaction by the delivery of deed as aforesaid.” Paragraph eight further provided that if the buyer failed to perform, the seller and the broker would divide the deposit, less certain expenses, between themselves. If the seller failed to perform, it still had to pay the full commission to the broker on demand. Burley signed the instrument on October 4, 1984, and Gardinier and Kilgore signed it on October 8, 1984.
 

 On March 22, 1985, pursuant to sections 363(b) and 365 of the Bankruptcy Code, Gardinier filed a motion with the bankruptcy court for entry of orders approving the assumption of the real estate contract and approving the sale of the Goldstein tract. At the same time, Gardinier sent notice to its creditors and other parties of interest that it intended to sell the Goldstein tract. At the hearing on the motion, held on April 13, 1985, the Unsecured Creditors Committee (the “Committee”) raised an objection to the payment of Kilgore’s brokerage commission on the ground that the brokerage agreement, although contained within the same instrument as the contract for the sale of the Goldstein tract, was a distinct, separate and fully executed agreement that could not be assumed post-petition. The court did not consider any evidence on this issue during the hearing. Instead, it approved the assumption of the contract for sale between Gardinier and Burley and the sale of the Goldstein tract, but blocked disbursement of the brokerage commission to Kilgore pending a final determination on the issue raised by the Committee.
 

 On June 3, 1985, the bankruptcy court entered an order sustaining the Committee’s objection to Gardinier’s assumption of the brokerage agreement on the ground that it was a separate, fully executed agreement that could not be assumed post-petition [50 B.R. 491]. The court thus denied payment of the broker’s commission out of the sales proceeds, but acknowledged Kilgore’s right to file a proof of claim for its unsecured, nonpriority, pre-pe-tition claim to the commission. Kilgore appealed, and prior to oral argument before the district court, the bankruptcy court confirmed Gardinier’s reorganization plan, which transferred Gardinier’s interest in the appeal to Alvin Bernstein, as trustee of one of two liquidating trusts established for the benefit of Gardinier’s creditors. The trustee was therefore substituted as the appellee in the appeal to the district court. In an order dated August 29, 1986, the district court reversed the bankruptcy court on the ground that the agreements were separate and distinct, and thus, because a bankruptcy trustee cannot accept the benefits of an executory contract without also assuming its burdens,
 
 [1]
 
 the trustee had to assume the brokerage agreement if it assumed the purchase and sale agreement.
 

 II. DISCUSSION
 

 We agree with the trustee and the bankruptcy court that the brokerage agreement was separate from the purchase and sale agreement.
 
 [2]
 
 As the trustee cor
 
 *976
 
 rectly noted, the intention of the parties is the governing principle in contract construction,
 
 Edward J. Gerrits, Inc. v. Astor Electric Service, Inc.,
 
 328 So.2d 522, 524 (Fla.Dist.Ct.App.1976);
 
 Rylander v. Sears Roebuck & Co.,
 
 302 So.2d 478, 479 (Fla.Dist.Ct.App.1974);
 
 Bal Harbour Shops, Inc. v. Greenleaf & Crosby Co., Inc.,
 
 274 So.2d 13, 15 (Fla.Dist.Ct.App.1973), and, absent ambiguity in the terms of a contract, intent is gleaned from the four corners of the instrument,
 
 see Robert C. Roy Agency, Inc. v. Sun First National Bank,
 
 468 So.2d 399, 405 (Dist.Ct.App.),
 
 review denied,
 
 480 So.2d 1295 (Fla.1985);
 
 Boat Town U.S.A., Inc. v. Mercury Marine Division of Brunswick Corp.,
 
 364 So.2d 15, 17 (Fla.Dist.Ct.App.1978). Furthermore, that the terms of a transaction are set forth in one instrument is not conclusive evidence that the parties intended to make only one contract, but is only a factor in determining intent.
 
 See
 
 3A Corbin on Contracts § 696, at 291-92 (1960);
 
 Armstrong v. Illinois Bankers Life Ass’n,
 
 217 Ind. 601, 615, 29 N.E.2d 415, 420 (1940);
 
 Stoneburger v. Fletcher,
 
 408 N.E.2d 545, 549 (Ind.Ct.App.1980). Thus, we look to the terms of the “Contract for Sale of Real Estate” to determine whether Gardinier, Burley, and Kilgore intended to make one contract or two separate contracts.
 

 Although there is only one document memorializing this transaction, there is otherwise no clear indication from the face of the instrument that the parties intended to make only one contract. Instead, the terms of the instrument demonstrate that the parties intended to make two separate contracts. In its order, the bankruptcy court noted three aspects of the transaction that we agree are persuasive evidence of this intent. First, the nature and purpose of the agreements are different. One agreement addresses the sale of property and the other contemplates an employment contract related to the sale of the property. Second, the consideration for each agreement is separate and distinct. Burley agreed to pay Gardinier in excess of $5 million in consideration for the Goldstein tract. Gardinier separately agreed to pay Kilgore a commission as consideration for services rendered in making the sale of the property. There was no consideration flowing between the broker and the buyer.
 
 See Liebowitz v. Wright Properties,
 
 427 So.2d 783, 785 (Dist.Ct.App.) (broker’s services not consideration to buyer if contract expressly provides that seller will pay broker),
 
 review denied,
 
 440 So.2d 352 (Fla.1983);
 
 Williams v. Stewart,
 
 424 So.2d 204, 205 (Fla.Dist.Ct.App.1983) (same). Finally, the obligations of each party to the instrument are not interrelated. Gardinier obligated itself to deliver the deed to Burley upon payment of the purchase price, and it obligated itself to pay a commission to Kil-gore upon completion of the broker’s responsibilities. There are no promises running between the broker and the purchaser; their only relation is that each has separate contractual rights with the seller.
 

 In its order, the bankruptcy court cited
 
 Florida Mortgage Financing, Inc. v. Flagler Plaza Corp.,
 
 308 So.2d 571 (Dist.Ct.App.), ce
 
 rt. denied,
 
 317 So.2d 443 (Fla.1975), for the proposition that the brokerage agreement was separate from the purchase and sale agreement. The issue in
 
 Flagler
 
 was whether an agreement to pay a commission to a mortgage broker for obtaining a purchase money acquisition
 
 *977
 
 loan and a permanent end loan should be construed to require part payment of the commission when the broker was able to obtain only the permanent end loan. The court held that because “each and all of [the contract’s] parts appear to be interdependent and common to one another and the consideration,” it was not divisible and the broker was not entitled to any commission.
 
 Id.
 
 at 572. Relying on this language, the bankruptcy court reasoned that since, in its opinion, the broker would get paid even if the sale never closed,
 
 [3]
 
 the agreements were not interdependent and, therefore, were separate. The district court reversed the bankruptcy court on the ground that since, in its opinion, the broker was not guaranteed a commission until the deal closed
 
 [4]
 
 and the buyer was not obligated to pay the seller unless the seller paid the broker a 10% commission from the proceeds of the sale,
 
 [5]
 
 the agreements were interdependent and therefore indivisible.
 

 Although we agree with the result reached by the bankruptcy court, we note that its reliance on
 
 Flagler,
 
 and the resulting emphasis by it and the district court on “interdependence,” is misplaced. The issue in
 
 Flagler,
 
 and in other cases cited by the parties for the same proposition,
 
 [6]
 
 was whether numerous promises, each between the same promisor and promisee and contained within one instrument, constituted one or more contracts, and not, as here, whether two promises, each with a different promisor and promisee, constitute one or more contracts. Neither of the courts below nor either party cites any case suggesting that if promises between different parties are dependent or conditioned on one another, it is evidence that the parties intended the agreements to actually form one contract. Moreover, none offers any convincing reason why this should be so. Contracts are often conditioned upon the com
 
 *978
 
 pletion of totally separate agreements.
 
 See, e.g., D.L. Walker & Co. v. Lewis,
 
 267 Ky. 107, 101 S.W.2d 685 (1937) (lease of stone quarry conditioned upon prospective lessee’s award of highway contract);
 
 Pyro Incinerator & Supply Corp. v. Gervais F. Favrot Co., Inc.,
 
 210 So.2d 356 (La.Ct.App.1968) (award of subcontract conditioned upon award of general contract with city). Purchase and sale agreements frequently condition the buyer’s performance on its ability to obtain a mortgage.
 
 See, e.g., Dawson v. Malloy,
 
 428 So.2d 297 (Dist.Ct.App.),
 
 review denied,
 
 436 So.2d 99 (Fla.1983);
 
 Merritt v. Davis,
 
 265 So.2d 69 (Fla.Dist.Ct.App.1972). In such a case, even though the purchase and sale agreement is conditioned upon the mortgage agreement, and even though the buyer is a party to both agreements, it would be illogical to argue that the parties intended the agreements to form only one contract, even if, for some reason, both agreements appeared in the same instrument. Since the appellee fails to convince us that the independence or interdependence of the agreements is persuasive evidence of intent in this case, the only indication we have that the parties intended one contract is that the agreements appear in a single document. This by itself is insufficient to overcome the evidence discussed supra that demonstrates the parties’ intent to form two contracts.
 
 [7]
 

 III. CONCLUSION
 

 Our decision allows the trustee to assume the contract for the sale of land and reject the separate brokerage agreement, relegating Kilgore to the status of a general unsecured creditor. 11 U.S.C. §§ 365(g), 502(g). As a result, Kilgore will be paid from its share of the estate’s assets instead of from the proceeds of the sale of the Goldstein tract, and will most likely reap only a percentage of its $500,000 commission. This, however, is the harsh reality of bankruptcy. Because Kilgore has not demonstrated that its agreement with Gardinier entitles it to special treatment, it must suffer the consequences of Gardinier’s bankruptcy along with the other general creditors.
 

 The order of the district court is REVERSED.
 

 [1]
 

 . Although the district court cited no authority for this proposition, it is well supported in the case law.
 
 See, e.g., Richmond Leasing Co. v. Capital Bank, N.A.,
 
 762 F.2d 1303, 1311 (5th Cir.1985);
 
 Lee v. Schweiker,
 
 739 F.2d 870, 876 (3d Cir.1984);
 
 In re Steelship Corp., 576
 
 F.2d 128, 132 (8th Cir.1978).
 

 [2]
 

 . The bankruptcy court also found that the brokerage agreement was nonexecutory and therefore nonassumable, and both parties addressed this issue in their briefs to this court. For the following reason, we decline to decide whether or not the brokerage agreement was executory. The Bankruptcy Code provides that a trustee may assume or reject an executory contract, subject to court approval. 11 U.S.C. § 365(a). The language of the code is permissive; it is up to the trustee to decide whether to assume or reject an executory contract.
 
 Id.; see also In re Charter Co.,
 
 52 B.R. 267, 270 (Bankr.M.D.Fla.1985) (assuming contract was executory, nothing in § 365 suggests debtor can be forced to assume it). The only limitation on the trustee’s discretion is that it is subject to court approval. However, since courts review a trustee’s decision to assume or reject a contract under a traditional "business judgment” standard, the scope of review in this area is narrow.
 
 See, e.g., NLRB v. Bildisco & Bildisco,
 
 465 U.S. 513, 523, 104 S.Ct. 1188, 1195, 79 L.Ed.2d 482 (1984);
 
 Group of Institutional Investors v. Chicago, Mil
 
 
 *976
 

 waukee, St. Paul & Pacific R.R.,
 
 318 U.S. 523, 550, 63 S.Ct. 727, 743, 87 L.Ed. 959 (1943).
 

 In light of the trustee’s position in this case, it is almost certain that if the brokerage agreement were found to be executory, he would elect to reject it. Furthermore, since rejection of the brokerage agreement would be beneficial to the estate and therefore indicative of sound business judgment on the trustee’s part, a court would approve the rejection.
 
 See Bildisco,
 
 465 U.S. at 523, 104 S.Ct. at 1195;
 
 Group of Institutional Investors,
 
 318 U.S. at 550, 63 S.Ct. at 743. The broker would thus become a general unsecured creditor of the estate. 11 U.S.C. §§ 365(g), 502(g). If, on the other hand, we found that the brokerage agreement was nonex-ecutory, the trustee would not be entitled to assume it,
 
 see
 
 11 U.S.C. § 365(a), and the broker would have a general unsecured claim for the amount of the commission,
 
 see
 
 11 U.S.C. § 501(a). Whether we find the brokerage agreement executory or nonexecutory, Kilgore will end up in the same position. Thus, since the resolution of this issue would have no effect on the outcome of this case, we decline to express any opinion on it.
 

 [3]
 

 . The bankruptcy court concluded that paragraph eight of the instrument dictated that the broker was entitled to a commission regardless of whether the sale closed. That paragraph provided that if the deal failed to close through the seller’s fault, the broker would still be entitled to a 10% commission, and that if the deal failed to close through the buyer’s fault, the broker would be entitled to one-half the deposit less expenses.
 

 [4]
 

 . The district court disagreed with the bankruptcy court’s construction of the instrument. Relying on paragraph two, which provided that if incurable title defects were discovered then all rights and liabilities under the contract would terminate, the district court reasoned that the sale did have to close in order for the broker to be assured of its commission. As discussed in more detail later in this opinion, the resolution of this particular disagreement between the two lower courts would not shed light on whether the parties intended the agreements to be separate or not. Since only the issue of separateness is before this court, we decline to offer any opinion on which lower court was correct regarding the interdependence of the two agreements.
 

 [5]
 

 . The district court attempted to support this conclusion by asserting that because the preamble to the contract states that the seller agrees to sell and the buyer agrees to buy upon certain terms and conditions, and because paragraph eight, the brokerage agreement, is not explicitly excluded as one of those conditions, it follows that the buyer would be excused if the seller did not pay the broker a commission. We do not think that the language of the contract is clear enough to support the drastic conclusion reached by the district court — that the buyer would be absolved of its obligations if the seller did not pay the broker a 10% commission from the sale proceeds.
 

 [6]
 

 . United States v. Bethlehem Steel,
 
 315 U.S. 289, 62 S.Ct. 581, 86 L.Ed. 855 (1942) (cited by appellee);
 
 Local No. 234, etc. v. Henley & Beckwith, Inc.,
 
 66 So.2d 818 (Fla.1953) (cited by appellee and appellant);
 
 Rhine v. New York Life Insurance,
 
 273 N.Y. 1, 6 N.E.2d 74 (1936) (cited by appellee).
 

 In addition, the appellee cites
 
 Smith v. Codos,
 
 311 So.2d 195 (Fla.Dist.Ct.App.1975), for the proposition that the location of a brokerage fee agreement within a real estate contract makes the brokerage fee agreement a material part of the real estate contract. We do not think that
 
 Codos
 
 applies in this case. The issue in
 
 Codos
 
 was whether a letter evidencing an agreement that a broker’s commission would be paid in installments was supplemental to or incorporated into a deposit receipt contract. The author of the letter had clearly stated that ”[t]his letter is to be considered part of [the original agreement] regarding the sale of subject property.”
 
 Id.
 
 at 196. With such a clear expression of intent, it was not surprising that the court found that "this agreement was incorporated as part of the original deposit receipt contract.”
 
 Id.
 
 Unlike in
 
 Codos,
 
 the contract in this case does not clearly express an intent to incorporate one agreement into another. Thus,
 
 Codos
 
 offers little guidance in our task of discerning the parties’ intent from the terms of the contract.
 

 [7]
 

 . The appellee cites
 
 In re Steelship Corp.,
 
 576 F.2d 128 (8th Cir.1978) for the general proposition that a trustee cannot reject a brokerage agreement while assuming a related contract for sale. In
 
 Steelship
 
 the court held that when a trustee assumed a contract for the sale of assets of a business, it also assumed an agreement to pay the broker a commission for procuring a buyer.
 
 Id.
 
 at 133.
 
 Steelship,
 
 however, is not persuasive in this case because the precise issue we face — whether the brokerage agreement was separate and distinct from the purchase and sale agreement — was not presented to the court in
 
 Steelship.