**In re ECOVENTURE WIGGINS PASS, LTD.,**

**Aqua at Pelican Isle Yacht Club Marina, Inc.,**

**Pelican Isle Yacht Club Partners, Ltd., Debtors.**

**Nos. 9:08–bk–9197–ALP, 9:08–bk–9198–ALP, 9:08–bk–9199–ALP.**

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

May 13, 2009.

Goodlette Coleman Johnson Yovanovich Koester, Naples, FL Daniel R. ogarty, Harley E. Riedel, Stephen R Leslie, Stichter, Riedel, Blain & Prosser, Tampa, FL, for Ecoventure Wiggins Pass, Lt.

**ORDER ON DEBTOR'S MOTION FOR SUMMARY JUDGMENT ON MOTION FOR ORDER AUTHORIZING ASSUMPTION AND SALE PURSUANT TO CONTRACTS FOR PURCHASE OF CONDOMINIUM UNITS**

ALEXANDER L. PASKAY, Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider the Debtor's Motion for Summary Judgment on Motion for Order Authorizing Assumption and Sale Pursuant to Contracts for Purchase of Condominium Units. (Doc. 306).

In its Motion, the Debtor requests authority to assume certain Purchase and Sale Agreements that were entered by Ecoventure Wiggins Pass, Ltd., as the Seller, prior to the filing of its bankruptcy Petition. The Purchase and Sale Agreements relate to condominium units in a development known as Aqua at Pelican Isle Yacht Club in Naples, Florida.

Written responses to the Debtor's Motion were filed by the Carl Redfield Trust 2000 Dated October 18, 2000 and Carl Redfield Trustee (Doc. 320), Donald J. Niederpruem (Doc. 321), Edward Cherney and Joanne Cherney (Doc. 322), Jerome A. Hayes (Doc. 323), Carlyle Investments, Inc. (Doc. 327), and R.J. Shirley and Jake Shirley (Doc. 383). The responding parties are all identified as "buyers" in the Purchase and Sale Agreements listed in the Debtor's Motion for Summary Judgment.

After the responses were filed, Edward Cherney and Joanne Cherney filed a Consent to Settlement (Doc. 378), and the Debtor and Carlyle Investments, Inc. filed a Joint Stipulation for Abatement of Motion to Assume and Motion for Summary Judgment (Doc. 389), based on a proposed sale to Carlyle free and clear of liens. (Doc. 372). Additionally, the Debtor filed a Supplemental Memorandum regarding its Motion for Summary Judgment, in which it withdrew its request for relief as to Jerome A. Hayes. (Doc. 379, p. 3).

For purposes of this Order, therefore, the respondents whose claims remain at issue are the Carl Redfield Trust 2000 Dated October 18, 2000 and Carl Redfield

Trustee, Donald J. Niederpruem, and R.J. Shirley and Jake Shirley (collectively, the Purchasers).

Each of the Purchasers entered into Purchase and Sale Agreements with the Debtor. The Purchasers assert, however, that they executed separate documents (Accommodation Agreements) at or around the same time that they executed the Purchase and Sale Agreements. According to the Purchasers, the Accommodation Agreements and the Purchase and Sale Agreements constitute single, integrated agreements between the Debtor and the respective Purchaser. Consequently, the Purchasers contend that the Debtor may not sever and assume only a portion of the parties' entire agreement pursuant to § 365 of the Bankruptcy Code.

### Background

The Debtor is the developer and owner of a luxury waterfront condominium complex known as the "Aqua at Pelican Isle Yacht Club" in Naples, Florida. The complex includes a residential tower, together with an adjacent marina and dock facility. Financing for the project was initially provided by a group of lenders led by Regions Bank, which loaned approximately $100 million to the Debtor to develop and construct the condominium units and facilities.

In 2006 and 2007, while the project was in development, the Debtor entered into a series of agreements with the Purchasers. Specifically, the Debtor and the Carl Redfield Trust entered into the following agreements:

Purchase and Sale Agreement dated November 15, 2006, relating to the sale of Unit PH 1007 for the purchase price of $4,675,000.00.

Agreement Regarding Accommodation Payment and Termination of Purchase and Sale Agreement dated December 4, 2006, relating to Unit PH 1007.

Purchase and Sale Agreement dated November 15, 2006, relating to the sale of Unit 907 for the purchase price of $3,000,000.00.

Agreement Regarding Accommodation Payment and Termination of Purchase and Sale Agreement dated December 4, 2006, relating to Unit 907.

The Debtor and Donald J. Niederpruem entered into the following agreements:

Purchase and Sale Agreement dated November 20, 2006, relating to the sale of Unit 705 for the purchase price of $2,850,000.00.

Agreement Regarding Accommodation Payment and Termination of Purchase and Sale Agreement dated November 30, 2006, relating to Unit 705.

Finally, the Debtor and R.J. Shirley or Jake Shirley entered into the following agreements:

Purchase and Sale Agreement dated November 1, 2006, relating to the sale of Unit 709 for the purchase price of $2,500,000.00.

Agreement Regarding Put–Call Option and Assignment of Purchase and Sale Agreement dated November 28, 2007, relating to Unit 709.

Purchase and Sale Agreement dated November 1, 2006, relating to the sale of Unit PH 1105 for the purchase price of $4,975,000.00.

Agreement Regarding Put–Call Option and Assignment of Purchase and Sale Agreement dated November 1, 2006, relating to Unit 1105.

Purchase and Sale Agreement dated November 5, 2006, relating to the sale of Unit 409 for the purchase price of $1,975,000.00.

Agreement Regarding Put–Call Option and Assignment of Purchase and Sale Agreement dated November 28, 2006, relating to Unit 409.

Purchase and Sale Agreement dated February 20, 2007, relating to the sale of Unit 607 for the purchase price of $2,600,000.00.

Agreement Regarding Accommodation Payment and Termination of Purchase and Sale Agreement dated February 20, 2007, relating to Unit 607.

In addition to the agreements listed above, the parties also entered agreements relating to the purchase of marina slips or other amenities associated with the project, as well as various addenda to the agreements.

According to the Debtor, each of the Purchase and Sale Agreements executed by the Purchasers is a "standard form" agreement as promulgated in accordance with the Florida Condominium Act. (Doc. 306, pp. 8–9). Generally, the Purchase and Sale Agreements provided in part:

1. The Purchasers would purchase a condominium unit from the Debtor for the purchase price set forth in the respective Agreement. (¶¶ 1, 2).

2. The Purchasers would pay an Earnest Money Deposit to the designated Escrow Agent, generally in an initial amount equal to 10% of the purchase price. (¶ 2).

3. The Debtor was subject to a pre-sale requirement by its lender, and could unilaterally terminate the agreement if it was unable to meet the pre-sale requirement. (¶ 28).

4. The Purchasers were entering into the agreement "with the full intention of complying" with each obligation thereunder, including the obligation to close on the purchase of the unit. The Purchasers further represented that the Debtor had not made any statement indicating that they would not be obligated to close the purchase. (¶ 37).

The Purchase and Sale Agreements also provided that the sale of the units would close within fifteen days after the Debtor notified the Purchaser that the unit was substantially complete. (¶ 5).

Shortly after the Purchasers executed the Purchase and Sale Agreements, or on the same date, they also executed Agreements Regarding Accommodation Payment and Termination of Purchase and Sale Agreement (Accommodation Agreements). The Accommodation Agreements relate to the same condominium units that were the subject of a Purchase and Sale Agreement. Each Accommodation Agreement expressly provides that the corresponding Purchase and Sale Agreement is attached to the Agreement and made a part thereof. (Recitals, p. 1).

Each Accommodation Agreement further provides in part:

1. The Purchasers will deposit an Earnest Money Deposit with the Escrow Agent in an amount equal to 20% of the purchase price, of which the first 10% may be in the form of an unconditional, irrevocable letter of credit.

2. The Debtor agrees to pay the Purchasers interest on their deposit at the rate of 25% per annum. If the sale is closed, the purchase price will be reduced by the amount of the "accommodation payment."

3. The Debtor will continue to market the condominium unit, and will use diligent efforts to replace the Purchaser's Purchase and Sale Agreement with an agreement to sell the unit to a third party. In fact, the Debtor is obligated to accept any offer from a third party that is equal to or greater than the purchase price payable under the Purchaser's Purchase and Sale Agreement.

4. If the pre-sale contingency required by the Debtor's lender is satisfied, the Debtor may terminate the Purchase and Sale Agreement.

5. The Accommodation Agreement constitutes the entire agreement among the parties, and supersedes all prior agreements among the parties with respect to the same subject matter.

Additionally, each Accommodation Agreement provides that its terms are confidential, and that the Purchasers agree not to disclose such terms without the Debtor's consent.

Apart from the Accommodation Agreements described above, R.J. Shirley or Jake Shirley also executed three documents entitled Agreement Regarding Put–Call Option and Assignment of Purchase and Sale Agreement. The "Put–Call" agreements contain some of the same terms as the Accommodation Agreements, such as the provision for an Earnest Money Deposit in the amount of 20% of the purchase price, the provision for payment of interest on the deposit at the rate of 25% per annum, and the provision that the agreement constitutes the entire agreement between the parties and supersedes all prior agreements. As explained by Shirley, however, the "Put–Call" agreements also provide Shirley with an option to assign his rights under the Purchase and Sale Agreement to another individual, identified as an insider of the Debtor, upon the conditions stated in the agreement. (Doc. 383, n. 8).

On June 24, 2008, the Debtor filed its Petition under Chapter 11 of the Bankruptcy Code. The condominium complex was not completely constructed as of the Petition date. On July 26, 2008, the Court entered an Order authorizing the Debtor to obtain post-petition financing from Cypress Lending Group, Ltd. in the amount of $26.1 million. (Doc. 67). The purpose of the post-petition financing was to enable the Debtor to complete the construction of the project.

In December of 2008, approximately six months after the Chapter 11 Petition had been filed, the Debtor completed the construction of a residential tower. A certificate of occupancy was granted for the tower on December 31, 2008.

### Discussion

■ In its Motion for Summary Judgment, the Debtor is seeking to assume the "standard form" Purchase and Sale Agreements pursuant to § 365(a) of the Bankruptcy Code. (Doc. 306, p. 11). Section 365(a) provides:

**11 USC § 365. Executory contracts and unexpired leases**

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a). The section allows a debtor "to maximize the value of the debtor's estate by assuming executory contracts that benefit the estate and rejecting those that do not." *In re Seven Hills, Inc.*, 403 B.R. 327, 334 (Bankr.D.N.J.2009).

Generally, courts have found that prepetition contracts for the sale of real property by a debtor are executory for purposes of § 365 of the Bankruptcy Code. *In re Chira*, 367 B.R. 888, 895 (S.D.Fla.2007)(citing *In re General Development Corp.*, 84 F.3d 1364, 1371 (11th Cir.1996)).

In this case, however, the Debtor is seeking to assume only the Purchase and Sale Agreements that were executed by the Purchasers prior to the filing of the bankruptcy Petition. The Debtor is not seeking to assume the Accommodation Agreements that were executed by the same parties, and that refer to and incorporate the Purchase and Sale Agreements.

■ The Debtor acknowledges that it is required to "assume a contract in whole and not in part, accepting its benefits and burdens." (Doc. 306, p. 14). See also *In re Beverage Canners International Corp.*, 255 B.R. 89, 95 (Bankr.S.D.Fla.2000) ("It is black letter law that an executory contract must be either assumed in its entirety, *cum onere,* or completely rejected.") (cited in *In re Aneco Electrical Construction, Inc.*, 326 B.R. 197, 201 (Bankr.M.D.Fla. 2005)).

The Debtor asserts, however, that the Purchase and Sale Agreements and the Accommodation Agreements are divisible, severable agreements, and that it may therefore separately assume or reject the individual contracts. (Doc. 306, p. 14). In its Motion for Summary Judgment, for example, the Debtor expressly asserts that it is requesting a determination as a matter of law that the Accommodation Agreements are "separate, severable, and need not be assumed as part and parcel of the standard form Purchase and Sale Agreements." (Doc. 306, p. 18).

Generally, a summary judgment may be entered if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Fed. R.Bankr.P. 7056, 9014(c). The moving party has the burden of establishing its right to summary judgment. *In re Transit Group, Inc.*, 332 B.R. 45, 51 (Bankr. M.D.Fla.2005) (citations omitted).

### A. Florida law

■ The severability of an agreement is generally determined according to state law. *In re Aneco Electrical Construction, Inc.*, 326 B.R. at 201(citing *In re Adelphia Business Solutions, Inc.*, 322 B.R. 51, 54 n. 10 (Bankr.S.D.N.Y.2005) and *In re Wolflin*

*Oil, L.L.C.,* 318 B.R. 392, 397 (Bankr. N.D.Tex.2004)).

The Purchase and Sale Agreements and Accommodation Agreements that are at issue in this case provide that they shall be governed by Florida law. (Purchase and Sale Agreement, ¶ 20; Accommodation Agreement, ¶ 16).

■ "Under Florida law, where two or more documents are executed by the same parties, at or near the same time and concerning the same transaction or subject matter, the documents are generally construed together as a single contract." *Bragg v. Bill Heard Chevrolet, Inc. Plant City,* 374 F.3d 1060, 1067 (11th Cir.2004)(citing *Clayton v. Howard Johnson Franchise Systems, Inc.,* 954 F.2d 645, 648 (11th Cir.1992) and *Quix Snaxx, Inc. v. Sorensen,* 710 So.2d 152, 153 (Fla. 3d DCA 1998)).

■ In this case, each Purchase and Sale Agreement and the corresponding Accommodation Agreement were executed by the same parties, namely the Debtor as the Seller, and a Purchaser as the Buyer. In some cases, the Accommodation Agreement was executed on the same date as the Purchase and Sale Agreement. In the remainder of the cases, the Accommodation Agreement was executed within one month following the Purchase and Sale Agreement.

Each Purchase and Sale Agreement relates to the sale of a specific unit of the Debtor's condominium development. The corresponding Accommodation Agreement expressly provides that a copy of the Purchase and Sale Agreement is attached to the Accommodation Agreement and made a part thereof. The Accommodation Agreement also refers to the Purchaser's purchase of the specific condominium unit, and provides that its terms represent an accommodation to the Purchaser for enter-

ing into the Purchase and Sale Agreement. (Recitals, p. 1).

Under these circumstances, the Court finds that each Purchase and Sale Agreement and the corresponding Accommodation Agreement should be construed as a single contract under Florida law. They were executed at or near the same time by the same parties. *Computer Sales International, Inc. v. State of Florida*, 656 So.2d 1382, 1384 (Fla. 1st DCA 1995) (Documents executed on different days may be a single contract); *Citicorp Real Estate, Inc. v. Ameripalms 6B GP, Inc.*, 633 So.2d 47, 49 (Fla. 3d DCA 1994) (Documents are "contemporaneous" for purposes of forming a single contract if they are so approximate in time as to explain the quality and character of the transaction.).

Additionally, the documents concern the same subject matter. In other words, it is clear from the documents that they were intended to be read together as the parties' comprehensive agreement regarding the sale of the specified units in the Debtor's condominium development. *Mnemonics, Inc. v. Max Davis Associates, Inc.*, 808 So.2d 1278, 1280 (Fla. 5th DCA 2002); *Quix Snaxx, Inc. v. Sorensen*, 710 So.2d at 153–54.

The documents should be construed as a single contract under Florida law.

### B. *Gardinier*

Additionally, the parties rely on the decision of the Eleventh Circuit Court of Appeals in *In re Gardinier, Inc.*, 831 F.2d 974 (11th Cir.1987) as guidance for determining whether the Purchase and Sale Agreements and their corresponding Accommodation Agreements constitute separate and divisible contracts, or whether they constitute single, non-severable contracts representing the total agreement between the parties.

In *Gardinier*, the issue was "whether an agreement to pay a brokerage commission, contained within the same document as a purchase and sale agreement, is a separate and distinct contract from the purchase and sale agreement." *In re Gardinier*, 831 F.2d at 974. The Court concluded that the brokerage agreement was separate from the purchase and sale agreement. *Id.* at 975. In *Gardinier*, the parties to the brokerage agreement (Gardinier and Kilgore) were different from the parties to the purchase and sale agreement (Gardinier and Burley), and "there was no consideration flowing between the broker and the buyer." *Id.* at 976. The obligations of the parties were not interrelated. *Id.* The two agreements were separate and distinct.

In evaluating the issue, the Court found that the parties' intention was the governing principle in deciding whether they made one contract or two, and that the parties' intention should be determined from the documents themselves, absent any ambiguity in the terms of the agreement. *Id.* at 976. The Court further found that the parties' intention was evidenced by the nature and purpose of the agreements, the consideration for the agreements, and the interrelation of the obligations set forth in the agreements. *Id.*

The Court has applied the principles set forth in *Gardinier* to the documents in this case, and finds that each Purchase and Sale Agreement and its related Accommodation Agreement constitute a single, nonseverable contract.

First, each Purchase and Sale Agreement provides that the Debtor will sell a specified unit of its condominium project to the Purchaser for the purchase price stated in the Agreement. Generally, each Purchase and Sale Agreement also provides that the Purchaser will remit an

initial earnest money deposit to the designated Escrow Agent in an amount equal to 10% of the purchase price. The Accommodation Agreement related to each Purchase and Sale Agreement, however, provides that the Purchaser will pay an earnest money deposit in an amount of 20% of the purchase price, and that a portion of the deposit may be paid by virtue of an unconditional, irrevocable letter of credit.

As to each transaction, it appears that the amount of the deposit actually paid by the Purchaser totaled 20% of the purchase price, and that a portion of the deposit was paid by a letter of credit, as permitted under the Accommodation Agreement. (Docs.298, 383, 385). Consequently, although the parties looked to the Purchase and Sale Agreement to determine the specific unit subject to the sale and its purchase price, it appears that they looked to the Accommodation Agreement to determine the amount and form of the deposit to be remitted by the Purchaser.

Further, each Purchase and Sale Agreement contemplates a pre-sale of the condominium unit, before construction of the condominium is complete. (Doc. 306, ¶ 14). Provisions indicating that the sale is a pre-sale include Paragraphs 3, 4, 5, 9, and 25 of the Purchase and Sale Agreements. Additionally, paragraph 28 of the Purchase and Sale Agreements acknowledges that the Debtor is subject to a pre-sale requirement by its lender, and provides that the Debtor may terminate the Purchase and Sale Agreement if it is unable to meet the pre-sale requirement.

The fact that the Purchase and Sale Agreements reflect pre-sales of the units is significant in determining whether the Agreements are severable from their corresponding Accommodation Agreements. Specifically, the nature of the sales as pre-sales is significant because the Accommo-dation Agreements contain a number of provisions that affect the parties' obligations to conclude the pre-sales set forth in the Purchase and Sale Agreements.

The Accommodation Agreements provide, for example, that the Debtor will continue to market the particular unit subject to the pre-sale, and will use diligent efforts to replace the Purchaser's Purchase and Sale Agreement with a contract to sell the unit to a third party. In the case of the "Put–Call" agreements, the agreements provide that the Purchaser and an Assignee will have "reciprocal options" regarding the purchase of the unit subject to the pre-sale. In other words, either the Purchaser or the Assignee can compel the assignment of the Purchaser's rights under the Purchase and Sale Agreement to the Assignee.

The Accommodation Agreements also provide that the Debtor will pay interest to the Purchasers on their earnest money deposit at the rate of 25% per annum if the Purchase and Sale Agreement is terminated. Alternatively, if the sale to the Purchaser is ultimately closed, the purchase price will be 80% of the price set forth in the Purchase and Sale Agreement, and the Debtor will deduct the "accommodation payment" from the price paid by the Purchaser. Further, according to the Accommodation Agreements, the Debtor can terminate the Purchase and Sale Agreement if a replacement contract is obtained, or if the Debtor's pre-sale contingency is satisfied. According to the "Put–Call" agreements, the Purchaser may exercise his option to assign his rights under the Purchase and Sale Agreement in the event that the Debtor's pre-sale contingency is satisfied.

It is clear from the terms of each contract that the parties intended to enter into a pre-sale of the unit to the Purchaser, and that the pre-sale could be canceled

upon the occurrence of any of the conditions set forth in the agreement. There is no indication in the respective Accommodation Agreement that it was intended to stand alone, independent of the Purchase and Sale Agreement. See *In re Aneco Electrical Construction, Inc.,* 326 B.R. at 202. Instead, the obligation of each Purchaser to pay the earnest money deposit, and the obligation of the Debtor to sell the unit to the Purchaser or to "accommodate" him pursuant to the Accommodation Agreement, are mutually dependent and interrelated terms. *Aneco,* 326 B.R. at 202–03.

Given these provisions regarding the conditions and terms under which the pre-sales will be concluded, it is clear that the parties' complete agreement regarding the sales cannot be ascertained by considering only the Purchase and Sale Agreements.

Each Purchase and Sale Agreement and related Accommodation Agreement constitute a single, integrated contract between the parties.

### Conclusion

The matter before the Court is the Debtor's Motion for Summary Judgment on its Motion to Assume the Purchase and Sale Agreements entered by the Debtor and the Purchasers before the filing of the bankruptcy Petition. In its Motion, the Debtor seeks to assume the Purchase and Sale Agreements with the Purchasers, but not the Accommodation Agreements entered by the parties regarding the same condominium units.

The Court finds that the Debtor's Motion should be denied.

Each Purchase and Sale Agreement and the corresponding Accommodation Agreement constitute a single, integrated contract between the parties. Consequently, the Debtor may not sever the Purchase and Sale Agreement and assume only a portion of the parties' total agreement.

Accordingly:

**IT IS ORDERED** that:

1. The Debtor's Motion for Summary Judgment on Motion for Order Authorizing Assumption and Sale Pursuant to Contracts for Purchase of Condominium Units (Doc. 306) is denied.

2. The Debtor is not authorized to assume the Purchase and Sale Agreements as requested in its Motion.