### In re ECOVENTURE WIGGINS PASS, LTD.,

**Aqua at Pelican Isle Yacht Club Marina, Inc.,**

**Pelican Isle Yacht Club Partners, Ltd., Debtors.**

Nos. 9:08–bk–9197–ALP, 9:08–bk–9198–ALP, 9:08–bk–9199–ALP.

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

May 13, 2009.

Goodlette Coleman Johnson Yovanovich Koester, Naples, FL, Daniel R Fogarty, Harley E. Riedel, Stephen R Leslie, Stichter, Riedel, Blain & Prosser, Tampa, FL, for Debtors.

## ORDER ON (1) DEBTOR'S MOTION FOR SUMMARY JUDGMENT ON MOTION FOR ORDER AUTHORIZING ASSUMPTION AND SALE PURSUANT TO CONTRACTS FOR PURCHASE OF CONDOMINIUM UNITS (OWENS), AND (2) CROSS–MOTION FOR SUMMARY JUDGMENT BY JAMES R. OWENS

ALEXANDER L. PASKAY,
Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider (1) the Debtor's Motion for Summary Judgment on Motion for Order Authorizing Assumption and Sale Pursuant to Contracts for Purchase of Condominium Units (Doc. 306), and (2) the Cross–Motion for Summary Judgment filed by James R. Owens (Doc. 317).

In its Motion, the Debtor requests authority to assume a Purchase and Sale Agreement that was entered by Ecoventure Wiggins Pass, Ltd., as the Seller, and James R. Owens (Owens), as the Buyer. The Purchase and Sale Agreement relates to Unit 905 of a condominium development known as Aqua at Pelican Isle Yacht Club in Naples, Florida.

In his Cross–Motion for Summary Judgment, Owens asserts that he terminated the Purchase and Sale Agreement on May 30, 2008, prior to the filing of the Debtor's bankruptcy Petition. Consequently, Owens contends that the Purchase and Sale Agreement was not executory as of the Petition date, and therefore is not assumable by the Debtor.

Owens further asserts that he terminated the Purchase and Sale Agreement in accordance with the terms of an Agreement Regarding Accommodation Payment and Termination of Purchase and Sale Agreement (the Accommodation Agreement) that was executed simultaneously with the execution of the Purchase and Sale Agreement. According to Owens, the Purchase and Sale Agreement and the Accommodation Agreement constitute a single, integrated agreement between the parties. (Doc. 317, pp. 3, 7). Even if the Purchase and Sale Agreement had not been terminated prepetition, therefore, Owens asserts that the Debtor may not sever and assume only a portion of the parties' entire agreement pursuant to § 365 of the Bankruptcy Code.

### Background

The Debtor is the developer and owner of a luxury waterfront condominium complex known as the "Aqua at Pelican Isle Yacht Club" in Naples, Florida. The complex includes a residential tower, together with an adjacent marina and dock facility. Financing for the project was initially provided by a group of lenders led by Regions Bank, which loaned approximately $100 million to the Debtor to develop and construct the condominium units and facilities.

On February 19, 2007, while the project was in development, the Debtor entered into a Purchase and Sale Agreement with Owens. The Agreement provided in part:

1. Owens would purchase condominium Unit 905 from the Debtor for the purchase price of $2,860,000.00. (¶¶ 1, 2). An Addendum to the agreement executed on the same day provided that Owens would also purchase the exclusive right to use a Guest Cottage for an additional purchase price of $325,000.00. Accordingly, the total purchase price for Unit 905 and the Guest Cottage was $3,575,000.00, and the total deposit to be paid by Owens was $715,000.00 (20% of the total purchase price).

2. The Debtor was subject to a pre-sale requirement by its lender, and could unilaterally terminate the agreement if it was unable to meet the pre-sale requirement. (¶ 28).

3. Owens was entering into the agreement "with the full intention of complying" with each obligation thereunder, including the obligation to close on the purchase of Unit 905. Owens further represented that the Debtor had not made any statement indicating that Owens would not be obligated to close the purchase. (¶ 37).

It is undisputed that Owens remitted a deposit in the amount of $715,000.00 to the Debtor or the designated Escrow Agent in accordance with the Purchase and Sale Agreement.

On the same day that the parties executed the Purchase and Sale Agreement, they also executed an Agreement Regarding Accommodation Payment and Termination of Purchase and Sale Agreement. The Accommodation Agreement expressly provides that the Purchase and Sale Agreement is attached to the Agreement and made a part thereof. (Recitals, p. 1).

The Accommodation Agreement further provides in part:

1. The Debtor agrees to pay Owens interest on his deposit at the rate of 25% per annum. (¶ 3). If the sale to Owens is closed, the purchase price will be reduced by the amount of the "accommodation payment." (¶¶ 3, 6).

2. The Debtor will continue to market Unit 905, and will use diligent efforts to replace Owens' Purchase and Sale Agreement with an agreement to sell the unit to a third party. In fact, the Debtor is obligated to accept any offer from a third party that is equal to or greater than the purchase price payable under Owens' Purchase and Sale Agreement. (¶ 4).

3. If the pre-sale contingency required by the Debtor's lender is satisfied, the Debtor may terminate Owens' Purchase and Sale Agreement. (¶ 5).

4. Owens has the right to terminate the Purchase and Sale Agreement at any time after one year from the effective date of the Agreement. (¶ 8).

5. The Accommodation Agreement constitutes the entire agreement among the parties, and supersedes all prior agreements among the parties with respect to the same subject matter. (¶ 12).

Additionally, the Accommodation Agreement provides that its terms are confidential, and that Owens agrees not to disclose such terms without the Debtor's consent. (¶ 23).

On May 30, 2008, Owens provided written notification to the Debtor of his election to terminate the Purchase and Sale Agreement pursuant to Paragraph 8 of the Accommodation Agreement.

On June 24, 2008, the Debtor filed its Petition under Chapter 11 of the Bankruptcy Code. The condominium complex was not completely constructed as of the Petition date. On July 26, 2008, the Court entered an Order authorizing the Debtor to obtain post-petition financing from Cypress Lending Group, Ltd. in the amount of $26.1 million. (Doc. 67). The purpose of the post-petition financing was to enable the Debtor to complete the construction of the project.

In December of 2008, approximately six months after the Chapter 11 Petition had been filed, the Debtor completed the construction of a residential tower. A certificate of occupancy was granted for the tower on December 31, 2008.

### Discussion

In its Motion for Summary Judgment, the Debtor asserts that, for "the avoidance of doubt, it is the standard form Purchase and Sale Agreements that the Debtors desire to assume." (Doc. 306, p. 11). The Debtor is not seeking to assume the Accommodation Agreement.

Owens contends, however, that he terminated the Purchase and Sale Agreement prior to the filing of the Debtor's bankruptcy Petition in accordance with the express terms of the Accommodation Agreement. Consequently, Owens asserts that the Purchase and Sale Agreement was not executory as of the Petition date, and therefore is not assumable under § 365 of the Bankruptcy Code.

Alternatively, even if the Purchase and Sale Agreement was not effectively terminated prepetition, Owens asserts that the Purchase and Sale Agreement and the Accommodation Agreement constitute a single, integrated contract between the parties. According to Owens, therefore, the Purchase and Sale Agreement cannot be severed and separately assumed by the Debtor. (Doc. 317, p. 7).

The Debtor and Owens both contend that they are entitled to the entry of a summary judgment in their favor. Generally, a summary judgment may be entered if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Fed.R.Bankr.P. 7056, 9014(c). The moving party has the burden of establishing its right to summary judgment. *In re Transit Group, Inc.*, 332 B.R. 45, 51 (Bankr.M.D.Fla.2005) (citations omitted.).

### A. The Debtor's right to assume the Purchase and Sale Agreement

■ The Debtor seeks to assume the Purchase and Sale Agreement pursuant to § 365(a) of the Bankruptcy Code. Section 365(a) provides:

**11 USC § 365. Executory contracts and unexpired leases**

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a). The section allows a debtor "to maximize the value of the debtor's estate by assuming executory contracts that benefit the estate and rejecting those that do not." *In re Seven Hills, Inc.*, 403 B.R. 327, 334–35 (Bankr.D.N.J. 2009).

Generally, courts have found that prepetition contracts for the sale of real property by a debtor are executory for purposes of § 365 of the Bankruptcy Code. *In re Chira*, 367 B.R. 888, 895 (S.D.Fla.2007)(citing *In re General Development Corp.*, 84 F.3d 1364, 1371 (11th Cir.1996)).

■ Where the sale contract was validly terminated before the bankruptcy case was filed, however, it is fundamental that the contract may not be resurrected and assumed by the debtor. *In re Seven Hills, Inc.*, 403 B.R. at 334–35. See also *In re Eagle Creek Subdivision, LLC*, 397 B.R. 758, 761–63 (Bankr.E.D.N.C.2008) (the debtor could not assume contracts to sell real estate that had been terminated prior to the filing of the bankruptcy Petition).

■ In this case, paragraph 8 of the Accommodation Agreement provides in part: ·

8. **Termination of Purchase Contract.** Notwithstanding anything to the contrary contained in this Agreement or the Purchase Contract, *Purchaser shall have the right to terminate the Purchase Contract upon written notice delivered to Seller at any time after the expiration of one (1) year from the effective date of the Purchase Contract.* Upon such termination of the Purchase Contract by the Purchaser, the Accommodation Payment will stop accruing interest,

and Seller shall (i) cause the Escrow Agent to immediately release and return Earnest Money Deposit to Purchaser and (ii) pay the Accommodation Payment to Purchaser within thirty (30) days of termination of the Purchase Contract, whereupon the parties will be released from all further liability and obligations under this Agreement, other than those specific obligations that survive termination. . . .

(Emphasis supplied). The Accommodation Agreement and the Purchase and Sale Agreement were both signed by the Debtor and Owens on February 19, 2007.

On May 30, 2008, more than one year after the execution of the Purchase and Sale Agreement, Owens sent a letter to the Debtor stating that he elected to terminate the Purchase and Sale Agreement pursuant to his rights under the terms of the Accommodation Agreement. (Doc. 317, Exhibit E).

The Debtor's Chapter 11 Petition was filed on June 24, 2008, approximately three weeks after Owens sent his notice of termination to the Debtor.

The Debtor suggests that the Purchase and Sale Agreement was not validly terminated, because paragraph 8 of the Accommodation Agreement only provides for a release of Owens' obligations under the Accommodation Agreement, but not for a release of his obligation to close under the Purchase and Sale Agreement. (Transcript, pp. 53–60). Reading paragraph 8 in its entirety, however, it is clear that Owens had the right to terminate the Purchase and Sale Agreement at any time after one year following the date of the agreement. The subsequent language in paragraph 8 regarding the parties' mutual releases relates only to settlement of the parties' respective liabilities under the Accommodation Agreement after Owens' deposit has

been returned and the Accommodation Payment has been paid.

The Purchase and Sale Agreement between the Debtor and Owens was effectively terminated prior to the filing of the bankruptcy Petition. Accordingly, the Purchase and Sale Agreement was not an executory contract as of the date of the Petition, and is not assumable by the Debtor under § 365(a) of the Bankruptcy Code. *In re EBC I, Inc.*, 356 B.R. 631, 638 (Bankr.D.Del.2006).

**B.  The Purchase and Sale Agreement and the Accommodation Agreement as a single, integrated agreement between the parties**

Even if the Purchase and Sale Agreement had not been terminated prepetition, Owens asserts that the Debtor's Motion to Assume the Purchase and Sale Agreement should be denied on other grounds.

According to Owens, the Purchase and Sale Agreement and Accommodation Agreement constitute a single, integrated contract between the parties. (Doc. 317, pp. 3, 7). Consequently, Owens contends that the Debtor should not be permitted to "cherry pick" the provisions of the contract that are favorable to the Debtor, and reject the provisions that are unfavorable to it. (Doc. 317, p. 12). In other words, since the parties entered into one unified contract, the Debtor must either assume or reject that contract in its entirety under § 365(a) of the Bankruptcy Code. (Doc. 317, p. 7).

The Debtor acknowledges that it is required to "assume a contract in whole and not in part, accepting its benefits and burdens." (Doc. 306, p. 14). See also *In re Beverage Canners International Corp.*, 255 B.R. 89, 95 (Bankr.S.D.Fla.2000) ("It is black letter law that an executory contract must be either assumed in its entirety, *cum onere*, or completely rejected.") (cited

in *In re Aneco Electrical Construction, Inc.*, 326 B.R. 197, 201 (Bankr.M.D.Fla. 2005)).

The Debtor asserts, however, that the Purchase and Sale Agreement and the Accommodation Agreement are divisible, severable agreements, and that it may therefore separately assume or reject the individual contracts. (Doc. 306, p. 14).

█ The severability of an agreement is generally determined according to state law. *In re Aneco Electrical Construction, Inc.*, 326 B.R. at 201(citing *In re Adelphia Business Solutions, Inc.*, 322 B.R. 51, 54 n. 10 (Bankr.S.D.N.Y.2005) and *In re Wolflin Oil, L.L.C.*, 318 B.R. 392, 397 (Bankr. N.D.Tex.2004)).

The Purchase and Sale Agreement and the Accommodation Agreement that are at issue in this case both provide that they shall be governed by Florida law. (Purchase and Sale Agreement, ¶ 20; Accommodation Agreement, ¶ 16).

█ "Under Florida law, where two or more documents are executed by the same parties, at or near the same time and concerning the same transaction or subject matter, the documents are generally construed together as a single contract." *Bragg v. Bill Heard Chevrolet, Inc. Plant City*, 374 F.3d 1060, 1067 (11th Cir.2004)(citing *Clayton v. Howard Johnson Franchise Systems, Inc.*, 954 F.2d 645, 648 (11th Cir.1992) and *Quix Snaxx, Inc. v. Sorensen*, 710 So.2d 152, 153 (Fla. 3d DCA 1998)).

█ In this case, the Purchase and Sale Agreement and the Accommodation Agreement were executed by the Debtor as the Seller, and by Owens as the Buyer. Both documents were executed on the same date, February 19, 2007. The Purchase and Sale Agreement relates to the sale of Unit 905 of a condominium development known as Aqua at Pelican Isle Yacht Club. The Accommodation Agreement expressly provides that a copy of the Purchase and Sale Agreement is attached to the Accommodation Agreement and made a part thereof. The Accommodation Agreement also refers to Owens' purchase of Unit 905 of the condominium project, and provides that its terms represent an accommodation to Owens for entering into the Purchase and Sale Agreement. (Recitals, p. 1).

Under these circumstances, the Court finds that the Purchase and Sale Agreement and the Accommodation Agreement should be construed as a single contract under Florida law. They were executed at the same time by the same parties, and it is clear from the documents that they were intended to represent a single contract setting forth the parties' agreement regarding Unit 905 of the condominium development. *Mnemonics, Inc. v. Max Davis Associates, Inc.*, 808 So.2d 1278, 1280 (Fla. 5th DCA 2002); *Quix Snaxx, Inc. v. Sorensen*, 710 So.2d at 153–54.

Additionally, both parties rely on the decision of the Eleventh Circuit Court of Appeals in *In re Gardinier, Inc.*, 831 F.2d 974 (11th Cir.1987) as guidance for determining whether the Purchase and Sale Agreement and the Accommodation Agreement constitute two separate and divisible contracts, or whether they constitute a single, non-severable contract representing the total agreement between the parties.

In *Gardinier*, the issue was "whether an agreement to pay a brokerage commission, contained within the same document as a purchase and sale agreement, is a separate and distinct contract from the purchase and sale agreement." *In re Gardinier*, 831 F.2d at 974. The Court concluded that the brokerage agreement was separate from the purchase and sale

agreement. *Id.* at 975. In *Gardinier,* the parties to the brokerage agreement (Gardinier and Kilgore) were different from the parties to the purchase and sale agreement (Gardinier and Burley), and "there was no consideration flowing between the broker and the buyer." *Id.* at 976. The obligations of the parties were not interrelated. *Id.* The two agreements were separate and distinct.

In evaluating the issue, the Court found that the parties' intention was the governing principle in deciding whether they made one contract or two, and that the parties' intention should be determined from the documents themselves, absent any ambiguity in the terms of the agreement. *Id.* at 976. The Court further found that the parties' intention was evidenced by the nature and purpose of the agreements, the consideration for the agreements, and the interrelation of the obligations set forth in the agreements. *Id.*

The Court has applied the principles set forth in *Gardinier* to the documents in this case, and finds that the Purchase and Sale Agreement and the Accommodation Agreement constitute a single, non-severable contract.

The Purchase and Sale Agreement provides that the Debtor will sell Unit 905 of Aqua at Pelican Isle Yacht Club to Owens for the total purchase price of $3,575,000.00 (including the price for Guest Cottage 5). Owens paid an earnest money deposit in the amount of $715,000.00 to the Escrow Agent identified in the Purchase and Sale Agreement.

The Purchase and Sale Agreement contemplates a pre-sale of the condominium unit, before construction of the condominium is complete. The provisions indicating that the sale is a pre-sale include Paragraph 3 (the unit will be constructed according to specifications), Paragraph 4 (a

portion of Owens' deposit may be used for construction), Paragraph 5 (the sale will close after the unit is substantially complete), Paragraph 9 (Owens may not cancel the Agreement because of construction delays), and Paragraph 25 (Owens will not interfere with construction workers on the site). Additionally, paragraph 28 acknowledges that the Debtor is subject to a pre-sale requirement by its lender, and provides that the Debtor may terminate the Purchase and Sale Agreement if it is unable to meet the pre-sale requirement.

The Purchase and Sale Agreement is attached as an exhibit and expressly "made part" of the Accommodation Agreement. (Recitals, p. 1).

The Accommodation Agreement provides that the Debtor will continue to market Unit 905, and will use diligent efforts to replace Owens' Purchase and Sale Agreement with a contract to sell the unit to a third party. (Recitals and ¶ 4).

The Accommodation Agreement also provides that the Debtor will pay Owens interest on his earnest money deposit at the rate of 25% per annum if the Purchase and Sale Agreement is terminated or, alternatively, the Debtor will deduct the "accommodation payment" from the purchase price if the sale to Owens is ultimately closed. (Recitals and ¶¶ 3, 6, 8). According to the Accommodation Agreement, the Debtor can terminate Owens' Purchase and Sale Agreement if a replacement contract is obtained or if the Debtor's pre-sale contingency is satisfied. (¶¶ 4, 5). Conversely, the Accommodation Agreement provides that Owens can terminate the Purchase and Sale Agreement at any time after one year from the contract date. (¶ 8).

It is clear from the terms of the contract that the parties intended to enter into a pre-sale of the unit to Owens, and that the

pre-sale could be canceled upon the occurrence of any of the conditions set forth in the agreement. There is no indication in the Accommodation Agreement that it was intended to stand alone, independent of the Purchase and Sale Agreement. See *In re Aneco Electrical Construction, Inc.*, 326 B.R. at 202. Instead, the obligation of Owens to pay the earnest money deposit pursuant to the Purchase and Sale Agreement, and the obligation of the Debtor to sell the unit to Owens or to "accommodate" him pursuant to the Accommodation Agreement, are mutually dependent and interrelated terms. *Aneco*, 326 B.R. at 202–03.

The Purchase and Sale Agreement and the Accommodation Agreement constitute a single, integrated contract between the parties.

### Conclusion

The matters before the Court are (1) the Debtor's Motion for Summary Judgment on its Motion to Assume a Purchase and Sale Agreement with Owens, and (2) Owens' Cross–Motion for Summary Judgment. In its Motion, the Debtor seeks to assume the Purchase and Sale Agreement with Owens, but not the Accommodation Agreement entered by the parties on the same date.

The Purchase and Sale Agreement was effectively terminated prior to the filing of the Debtor's bankruptcy Petition. Consequently, the Purchase and Sale Agreement was not executory as of the Petition date, and is therefore not assumable by the Debtor under § 365(a) of the Bankruptcy Code.

Additionally, the Purchase and Sale Agreement and the Accommodation Agreement constitute a single, integrated contract between the parties. Consequently, the Debtor may not sever the Purchase and Sale Agreement and assume only a portion of the parties' total agreement.

Accordingly:

**IT IS ORDERED** that:

1. The Debtor's Motion for Summary Judgment on Motion for Order Authorizing Assumption and Sale Pursuant to Contracts for Purchase of Condominium Units (Doc. 306) is denied.

2. The Cross–Motion for Summary Judgment filed by James R. Owens (Doc. 317) is granted to the extent that James R. Owens seeks a determination that the Debtor may not assume the Purchase and Sale Agreement.