418 So.2d 373 (1982)
MARK REALTY, INC., Appellant,
v.
Tilman A. ROGNESS, Appellee.
No. 81-1605.
District Court of Appeal of Florida, Fifth District.
August 18, 1982.
*374 Frank Clark III, Melbourne, for appellant.
Thomas E. Shine, Melbourne, for appellee.
COWART, Judge.
This case involves whether a particular brokerage transaction was "an offer for a unilateral contract subject to revocation by the owner at any time before performance by the broker" or whether the transaction constituted a bilateral contract not subject to revocation during the time provided and, if it was a bilateral contract, whether it created an "exclusive agency to sell" or an "exclusive right to sell."
*375 Appellee, owner, entered into four separate agreements with appellant real estate broker. The agreements were identical in form and substance except for the dates and time periods and property involved. They were entitled "exclusive right of sale" and gave the broker, for a stated period of time, the exclusive right to sell the property for a certain stated price and on certain terms. The broker sued on the four agreements for brokerage commissions, alleging that during the time provided in the agreements the owner had conveyed the four properties. The owner's answer contained denials of some of the allegations of the broker's amended complaint and also alleged affirmative defenses to the effect that the owner had "cancelled, revoked and terminated" the brokerage agreements before the properties were sold and that the broker had never performed under the agreements. It is not clear whether the last defense was meant to allege that under the agreements the broker was not entitled to commissions unless the broker procured the purchasers and that the broker did not, or whether the defense was an inartful allegation that the broker had not performed obligations under the agreement thereby breaching them before the sales by the owner.[1]
Following a non-jury trial, the trial judge found that the deed relied on by the broker as a sale of one of the properties (Lot 4, Ocean Residence North, William C. Irvin, et ux, et al) was, notwithstanding its form, a security arrangement and not a sale within the meaning of the brokerage agreement. Appellant having failed to demonstrate that this finding of fact is not supported by competent substantial evidence, that portion of the final judgment is affirmed.
However, rather than deciding appellant's claims for commissions as to the other three transactions on the evidence, the trial judge construed the brokerage agreements to constitute mere offers to enter into unilateral contracts under which the broker would be entitled to a commission only if he performed by "finding a purchaser of the above property."
The trial court was concerned about the fact that the brokerage agreements were stated in the first person, that the owner was "doing all of the agreeing" and that the broker had signed only under words stating "accepted by." The trial court (1) noted "there is no covenant or promise by the broker to do anything," (2) concluded that, since the owner's agreement was "not supported by a consideration in the form of a promise" by the broker, the document was only a promise of the owner to pay in exchange for performance by the broker finding a purchaser, (3) construed the documents as unilateral contracts, or more particularly, as offers for unilateral contracts subject to withdrawal or revocation by the owner at any time before performance by the broker and (4) found, as a matter of fact, that "the offers were revoked by the owner-defendant prior to performance by the plaintiff." If the documents in question are merely "offers limited to acceptance by performance only,"[2] the trial judge's analysis and conclusion would be correct. Because of the onesidedness of this type of contract,[3] we may agree that such a construction might reach a more fair result, but we cannot agree that the documents were only offers for a unilateral contract. The documents illustrate what has been termed "the usual practice" in the making of bargains.[4] One party first indicates what he will do and what he requires in exchange and the other then agrees. These documents, when first executed by the owner and tendered to the broker, constituted offers which, when accepted by the broker by his execution, constituted contracts. While the fact that the document *376 was first prepared by the broker may cause any ambiguities therein to be construed against the drafting broker,[5] the form of the instrument is an offer by the owner which was accepted by the broker. The contract is bilateral because it contains mutual promises made in exchange for each other by each of the two contracting parties.[6]
The most common recurring brokerage transaction is one in which the owner employs a broker to find a purchaser able and willing to buy, on terms stated in advance by the owner, and in which the owner promises to pay a specific commission for the service. Such a transaction as this is an offer by the owner of a unilateral contract, an offered promise to pay by the owner, creating in the broker a power of accepting the offer by actual rendition of the requested service. Here the only contemplated contract between the owner and broker is a unilateral contract  a promise to pay a commission for services rendered.[7] Such an offer of a promise to pay a commission for service rendered is revocable by the owner by notice before the broker has rendered any part of the requested service.[8] The owner's promise to the broker to pay a commission may itself be conditional, as where he promises to pay "on closing of the deal," etc. The broker's right to payment is thus made subject to such an additional express condition.[9]
On the other hand, the transaction between the owner and the broker can be a bilateral contract. An owner who puts his land in the hands of a broker for sale usually clearly promises to pay a commission but the broker rarely promises in return that he will produce a purchaser, although he often promises, expressly or impliedly, that he will make certain efforts to do so. If the parties have thus made mutual promises, the transaction no longer has the status of an unaccepted offer  there is an existing bilateral contract[10] and neither party has a power of revocation. During the term of such a contract the owner may withdraw any power the owner has given the broker to contract with a third party in the owner's name, but this is not a revocation of the contract between the owner and the broker and normally such action constitutes a breach of the brokerage contract unless the owner reserved a power of termination either by notice or by effecting a sale through other channels.[11] In this case, the broker promised to inspect the property, to list the property with a multiple listing service, to advertise the property in the local newspaper or other media, to furnish information to inquiring cooperating brokers and prospective purchasers, to show the property, to make efforts to find a purchaser, to "make an earnest and continued effort to sell,"[12] and to direct the concentrated efforts of his organization in bringing about a sale. The Florida Supreme Court in Flynn v. McGinty, 61 So.2d 318 (Fla. 1952), held that, in a contract similar to the instant contract, a clause that *377 required the broker to "endeavor to procure a purchaser" was sufficient consideration for the brokerage agreement. Id.
Not only are the agreements in this case enforceable bilateral contracts, but a reading of the contracts indicates that they granted the broker an "exclusive right of sale" as opposed to an "exclusive agency of sale." The controlling determination between an "exclusive right of sale" and an "exclusive agency to sell" was also addressed in Flynn v. McGinty. In quoting favorably from the Texas case of Baker v. Skipworth, 244 S.W.2d 299, 300 (Tex.Civ. App. 1951), the court stated:
We are of the opinion that the disposition of this case is controlled by a well settled principle. A clear distinction is drawn between the appointment of a broker as an `exclusive agent to sell'; and the granting to him the `exclusive right to sell.' In the former contract, the owner does not surrender his own right to sell the property and in the event he does so, is under no obligation to pay a commission to the broker. In the latter case, the broker is entitled to his commission if owner makes sale during the life of the contract. This distinction seems to be valid, based on sound reasoning and is abundantly supported by the authorities. In fact we find no case asserting a contrary rule.
61 So.2d at 320.
Since the contract before the Flynn court "plainly and unequivocally stated that commission will be earned whether the property was sold `by myself, or through your instrumentality or any other person,'" the court held the contract plainly granted an exclusive right to sell. Flynn v. McGinty has been consistently followed by Florida appellate courts and where the contract clearly[13] gives up the owner's right to sell without paying a commission, a broker has been held entitled to his brokerage commission upon sale of the property no matter who procures the purchaser.[14] In the instant case, the contract clearly provided that the brokerage commission would be paid "whether the purchaser be secured by you or me, or by any other person... ."[15] Thus the contract granted the broker an exclusive right of sale and the trial court erred in construing the agreement as an offer of a unilateral contract revokable at will at any time prior to performance.
Since the trial court ruled that the contracts were unilateral and therefore revokable at will, the trial court never reached the issue of whether appellant broker had breached the brokerage contracts prior to the sale by the owner. The owner should be given an opportunity to have the trial court consider that issue; therefore the final judgment is reversed and this cause is remanded for the trial court to consider *378 that issue as a defense to the broker's claim for a commission under the three contracts. The trial court may take further testimony as it deems necessary for a fair and proper determination of that issue.
AFFIRMED in part; REVERSED in part; and remanded for further proceedings consistent with this opinion.
ORFINGER, C.J., and COBB, J., concur.
NOTES
[1] See note 12, infra.
[2] See Restatement (Second) of Contracts § 45 comment a (1981).
[3] See 1 Corbin on Contracts, § 50 at p. 194 (1963).
[4] See Restatement (Second) of Contracts § 22 comment a (1981).
[5] See Lindquist v. Burklew, 123 So.2d 261 (Fla.2d DCA 1960), where the court thought the brokerage contract was "ambiguous" and that it should be interpreted "against the draftsman" (the broker). This case is cited in 3A Corbin on Contracts, § 768 n. 1 (1960).
[6] 1 Corbin on Contracts, § 21 at 52 (1963).
[7] See 1 Corbin on Contracts, § 50 at pp. 195, 199 (1963); 10 Williston on Contracts, § 1287 at p. 957 n. 1 (3rd ed. 1967).
[8] 1 Corbin on Contracts, § 50 at 202 n. 88 (1963).
[9] See 1 Corbin on Contracts, § 50 at p. 201 n. 87.15 (1963); 3A Corbin on Contracts, § 768 at p. 548 nn. 99, 1 (1960) (see especially the Florida cases cited in the footnotes); 10 Williston on Contracts, § 1287 at p. 961 n. 9, § 1287A at p. 978 n. 18 (3rd ed. 1967).
[10] 10 Williston on Contracts, § 1287 at 962 n. 10, § 1287A at 979 n. 9 (3rd ed. 1967).
[11] 1 Corbin on Contracts, § 50, p. 195 & n. 81 (1963).
[12] Even if an exclusive right to sell did not expressly contain such a covenant on the part of the broker, one may be implied. See 3 Corbin on Contracts, § 567 at p. 331 & n. 63, § 568 at p. 331 & n. 79 (1960). Of course, the broker's breach of this promised performance prior to a sale by the owner would defeat the broker's claim for commission.
[13] Since courts are slow to take away the owner's inherent right to sell his property, these contracts are strictly construed; where the contract does not specifically promise a commission upon sale by the owner, it is construed to be simply an "exclusive agency to sell." See, e.g., Nicholas v. Bursley, 119 So.2d 722 (Fla.2d DCA 1960); cf. Planck v. Traders Diversified, Inc., 387 So.2d 440 (Fla. 4th DCA 1980), review denied, 394 So.2d 1153 (Fla. 1981) (typed-in clause controlled over printed form to turn a purported exclusive right to sell into an exclusive agency to sell).
[14] See, e.g., Law Realty, Inc. v. Pagliarulo, 385 So.2d 1093 (Fla. 4th DCA 1980); Community Cable Casting Corp. v. Daniels & Associates, Inc., 215 So.2d 17 (Fla. 1st DCA 1968), cert. denied, 225 So.2d 533 (Fla. 1969); Whitehurst v. Erstling, 184 So.2d 233 (Fla.3d DCA 1966); Rubin v. Beville, 132 So.2d 783 (Fla. 1st DCA 1961).
[15] A clause identical to the clause in the instant case was construed as granting an exclusive right to sell in Rubin v. Beville, 132 So.2d 783, 785 (Fla. 1st DCA 1961) ("The commission... is to be paid whether the purchaser be secured by you or me, or by any other person... .") Clauses substantially similar to the clause in the instant case were likewise construed as granting exclusive rights to sell in Flynn v. McGinty, 61 So.2d 318, 318-19 (Fla. 1952) ("and in the event of sale of said property by myself or through your instrumentality or any other person ... I agree ... to pay you a coomission [sic] ....") and Whitehurst v. Erstling, 184 So.2d 233, 234 (Fla.3d DCA 1966) ("commission was to be paid if a purchaser was secured ... by either the plaintiff or defendant or by any other person... ."). See also Winter v. Surfview Realty, Inc., 400 So.2d 839 (Fla. 5th DCA 1981).