# Third District Court of Appeal

## State of Florida

Opinion filed January 14, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-2164
Lower Tribunal No. 18-20316-CA-01
_____

**Carmona Realty Group, LLC**,
Appellant,

vs.

**Diana Fernandez,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Peter R. Lopez, Judge.

Meyer & Nuñez, P.A., and Robert C. Meyer, for appellant.

Gustavo J. Garcia-Montes, P.A., and Gustavo J. Garcia-Montes, for appellee.

Before FERNANDEZ, LINDSEY and GOODEN, JJ.

FERNANDEZ, J.

Carmona Realty Group, LLC ("Carmona Realty") appeals the trial court's Final Judgment and Order Denying Motion for Rehearing/New Trial. For the following reasons, we reverse the Final Judgment and the order denying rehearing.

## FACTS AND PROCEDURAL HISTORY

On June 24, 2017, Diana Fernandez ("Fernandez"), the seller, signed a real estate listing agreement titled "Exclusive Right of Sale Listing" Agreement ("Listing Agreement") with Carmona Realty, a licensed real estate broker, for the sale of Fernandez's residence at 1759 SW 154th Path, Miami, FL 33185. The agreement listed the sales price as $499,500.00 and authorized a commission to Carmona Realty of 5% of the total purchase price. The Listing Agreement further stated, "This Agreement is the entire agreement between Seller and Broker. No prior or present agreements or representations will be binding on Seller or Broker unless contained in this Agreement." The Listing Agreement provided that the broker's fee would be due if the seller refused or failed to sign an offer at the price and terms stated in this Agreement. The term of the Listing Agreement was for six (6) months; thus, it would end on December 23, 2017.

In addition to the Listing Agreement, Fernandez signed a document titled, "Instructions to other agents for submitting an offer" ("Instructions").

2

The Instructions informed brokers presenting contracts to Fernandez of some additional requirements. The Instructions stated that offers must be submitted on an "As-Is 5" Contract (or newer version) with a few addendums and/or additional terms, such as requiring a property inspection be attached and requiring a pre-qualification letter with contact information of loan officer or proof of funds for cash offers. The Listing Agreement did not mention the Instructions, nor do the Instructions reference the Listing Agreement. Fernandez signed the Instructions, but Carmona Realty did not.

Carmona presented the following seven "As-Is 5" contracts to Fernandez:

1. 7/6/17 Anibal Justiz & Viktoriya Shcherbina
      $470,000.00 offer
Rejected – Fernandez wrote, "Thank you but I am firm on $499,500"

2. 11/3/17 Angel Andres Arbelo & Genello Arbelo
      $470,000.00 offer
Rejected – Fernandez wrote, "Thank you for presenting the offer but that is a definite no"

3. Vallejo Carmona 1 Contract:
11/7/17 Leticia Vallejo Carmona
      $499,500.00 offer
Rejected because Fernandez said it was not a full price offer because it included all her furniture in the sale.

4. Vallejo Carmona 2 Contract:
11/11/17 Leticia Vallejo Carmona
      $499,500.00 second full price offer (without the furniture)

3

Rejected because Fernandez wanted to increase the price in the Listing Agreement.

5. Vallejo Carmona 3 Contract:
11/14/17    Leticia Vallejo Carmona
     $505,000.00 offer
Rejected because Fernandez wanted to increase the price in the Listing Agreement.

6. 11/14/17 Jose M. Ferrer
     $499,500.00 offer
Rejected because Fernandez wanted to increase the price in the Listing Agreement

7. 11/15/17        Walter and Shantel Barragan
     $499,500.00 offer
No response from Fernandez

An additional offer was made December 4, 2017, when Leticia Vallejo Carmona resubmitted her contract from November 14, 2017, with the offer price of $505,000 to Fernandez ("Vallejo Carmona 4 Contract"). Fernandez was notified via email from Carmona on December 4, 2017. There was no response from Fernandez to Carmona Realty regarding this offer.

On June 14, 2018, Carmona Realty sued Fernandez for breach of contract, seeking monetary damages for lost commission based on the Listing Agreement the parties had signed. Carmona Realty alleged it provided Fernandez with at least seven offers to purchase the property and that four offers were at the full listing price and one was at a higher price. It contended that Fernandez failed to accept any of the full price offers

4

"indicating that she wished more money than she had agreed to pursuant to the written Listing Agreement, . . .". Carmona Realty alleged Fernandez never conveyed to Carmona Realty what that additional amount was and instead waited for the Listing Agreement to expire on December 23, 2017.

Carmona Realty next filed a motion for summary judgment. At the hearing before the trial court, Carmona Realty argued that it brought six offers to purchase Fernandez's home at the listing price or higher, but that because Fernandez wanted to increase the contract price after the Listing Agreement had been signed, she refused to close on the multiple offers. Carmona Realty alleged Fernandez stated in her deposition she never read the Listing Agreement, so she was unaware of her obligations to cooperate in the sale of her home. The motion also alleged that Fernandez attempted to inject claims that she did not raise in the transaction period or in her deposition by filing an affidavit with the trial court where all her claims were contrary to her deposition testimony. Thus, Carmona Realty argued the affidavit must be disregarded. It contended Fernandez was responsible for failure to consummate the sale of her home, and commission was due to Carmona Realty. The Listing Agreement identified the financing terms, inspections and appraisals, as well as an agreed upon listing price that was $27,500 above Fernandez's Zillow.com appraised amount. Accordingly,

5

Carmona Realty argued that the trial court was not permitted to rewrite the contract. The trial court denied Carmona Realty's motion for summary judgment.

Carmona Realty then moved for partial summary judgment. It argued that Fernandez was precluded from claiming extra contractual terms or oral modifications because the Listing Agreement precludes amendments unless in writing signed by all parties.

Fernandez responded by filing an amended answer and amended affirmative defenses. Her affirmative defenses were: 1) failure to state a claim for which relief can be granted; 2) failure to perform; 3) lack of jurisdiction; and 4) breach of contract. Specifically, affirmative defense 2, "Failure to Perform", stated:

> The "Leticia Vallejo Carmona" sale, [], included a finance contingency, an appraisal contingency, and required that all shutter [sic] to be removed at closing time. The appraisal contingency and the mandate that owner remove the shutters was not part of the terms, and thus Defendant did not have to accept this offer.
>
> The second Vallejo offer, [], also had an Appraisal contingency included an appraisal contingency, and required that all shutter to be removed at closing time. The appraisal contingency and the mandate that owner remove the shutters was not part of the terms, and thus Defendant did not have to accept this offer.
>
> The Jose Ferrer offer, [], included all light fixtures and chandeliers, Appraisal Contingency, and a requirement that all

6

code enforcement citations to be corrected and paid for by seller prior to closing.

The Barragan Offer included the microwave, an appraisal contingency and for seller to contribute up to three per cent (3%) of the purchase priced towards the Buyer's Costs and/or prepaids.

In July 2022, Fernandez filed an affidavit in which she claims that Carmona was very pushy and wanted her to sell her property at a lower price than what she wanted. She stated Carmona ignored her requests to increase the price. She claimed she "communicated with Mr. Carmona regarding the price of the Property" on 10/5/2017, 11/10/2017, 11/13/2017, and 11/16/2017. She then listed each of the contracts and explained why she did not accept the offer. Fernandez alleged she rejected the Vallejo Carmona 1 Contract because she did not want her furniture included in the sale; she rejected the Vallejo Carmona 2 Contract because she wanted to increase the listing price; she rejected the Vallejo Carmona 3 Contract because she wanted to increase the sales price and the offer required that she remove all the shutters; she rejected the Ferrer offer because she wanted to increase the price, and Ferrer was only providing a $2,500 deposit for an FHA loan with an appraisal contingency; and she rejected the Barragan offer because she wanted to increase the price, and because the Barragan's wanted her to contribute 3% of the purchase price to the buyer's closing costs and/or

prepaids. Regarding the December 4, 2017 offer from Leticia Vallejo Carmona (Vallejo Carmona 4 Contract), Fernandez claimed that there was no email from Carmona and that he only resent to her the same Vallejo Carmona offer from 11/14/2017.

The matter was set for nonjury trial. At trial, Felipe Carmona, a licensed real estate broker with Carmona Realty who executed the Listing Agreement with Fernandez, testified to the following: After meeting with Fernandez at her house and showing her the comparables, she signed the Listing Agreement. According to the contract, Carmona Realty was entitled to a 5% commission.

The first full price offer Carmona received for Fernandez's property was from Leticia Vallejo Carmona on November 7, 2017 ("Carmona 1 Contract"). There had been only two previous offers a few months before for less than the listing price. Fernandez advised him this was not a full price offer because the furniture was included, and she did not want to sell the furniture. On November 11, 2017, Leticia Vallejo Carmona made another offer of $499,500 without the inclusion of the furniture in Fernandez's home ("Carmona 2 Contract"). Fernandez rejected the offer and said she would like to increase the price of the house. Fernandez never told him by how much she wanted to increase the price of the house.

The next offer to Fernandez was made on November 14, 2017 by Leticia Vallejo Carmona. This offer was for $505,000 - $5,000 over the listing price. Fernandez again rejected the offer because she wanted to increase the price of the house.

Thereafter, an offer was made by Jose M. Ferrer for $499,500 also on November 14, 2017. Fernandez, likewise, rejected this offer.

On November 15, 2017, an offer was made from Walter and Shantel Barragan for $499,500. Fernandez never replied to this offer.

On December 4, 2017, Carmona received a re-offer from Leticia Vallejo Carmona of $505,000.00 – the same amount as her November 17, 2017 offer. Again, Fernandez, never responded to that offer. After that, Fernandez refused to show the house any further. Carmona Realty, thus, was seeking 5% of the highest offer, $505,000.00, or $25,250.00, plus attorney's fees and costs, with interest.

On cross-examination, Carmona was asked about the offer from Leticia Vallejo Carmona on November 11, 2017 for $499,500. Defense counsel pointed out that the contract stated, "All shutters will be remove [sic] at closing time." The next offer on November 17, 2017 from Leticia Vallejo Carmona included the same term regarding the shutters. When defense counsel asked Carmona about the offer from Jose Ferrer, defense counsel

stated the initial deposit was $2,500, but it did not accompany the offer. Carmona agreed. In addition, defense counsel provided that the Ferrer offer stated, "Seller and buyer agree that all open/expired permits and code enforcement citations will be corrected and paid by seller." Carmona agreed. Regarding the Barragan offer, defense counsel pointed out that that offer stated that seller will contribute up to 3% of the purchase price [towards closing costs and/or prepaids]. Carmona agreed.

On re-direct, Carmona stated that when Fernandez rejected the contract, at no time did she mention shutters as the reason why she rejected. Regarding the Ferrer offer, Carmona stated Fernandez never mentioned that closing permits was a basis for her to reject the offer. Carmona agreed that in Fernandez's real property disclosure, she disclosed there were no open permits. Carmona agreed there were no violations of any type related to permits. Carmona thus agreed that the only basis for Fernandez rejecting these two offers was because Fernandez wanted more money.

Carmona stated Fernandez took the hurricane shutters down during Thanksgiving week of 2017. The offer from Leticia Vallejo Carmona on December 4, 2017 came in after that. Carmona testified that if Fernandez had asked him to remove the shutters, he would have gotten one of his workers to remove the shutters and he would have paid the cost.

On re-cross examination, in reference to the Barragan offer which indicating financing was to be done by the FHA according to the Listing Agreement, defense counsel asked Carmona where in the Listing Agreement did it advise Fernandez that signing the Listing Agreement would obligate her to pay the closing costs if it were an FHA loan. Carmona replied it was in the Barragan offer, "but you have it removed. Have [sic] she answer me, she could have tell [sic] me no."

On second re-direct examination, Carmona was asked:

> Sir, if someone submits a full price offer and the rejection is only based upon cost, then you - - because they want more money, you would have pursuant to the terms of the listing agreement, been entitled to your commission because you brought a full offer pursuant to the terms of the listing agreement, right?

Carmona replied yes.

Fernandez then testified. Fernandez had a bachelor's degree in business from FIU and was an assistant to a stockbroker. From the beginning, she wanted to list her house for much more than the listing price. Carmona told her they could test the market at the $499,500 price, and she could change the price in the future. She said Fernandez signed the Listing Agreement, but Carmona "left it open that I could change the price and that it was my decision." When asked if she would have had to prepare a formal change of price, Fernandez replied, "Yes that is correct. But he – he's – he's

11

the one who walked away from the sale and never formalized it in writing." Fernandez agreed they never formalized any change to the contract, but she stated it was because of Carmona's choosing. She stated Carmona did not answer her calls and removed the sign off her property. She admitted she never told Carmona what she wanted to increase the listing price to. She admitted there was no document amending the Listing Agreement. She admitted she unilaterally increased the price. Carmona Realty's counsel asked Fernandez if she had rejected an offer of purchase based upon the request for an appraisal, the request for an inspection, shutters, closing permits, or anything else except price. Fernandez replied, "There were a number of reasons. Price was one of them." Counsel then impeached Fernandez with her deposition testimony in which she stated that the reason she did not sell her house for the listing price was, "Mainly price." She later stated she read the listing agreement "[v]ery little." When asked during her deposition testimony if she read the Listing Agreement, she said, "Barely." When asked if she went back and read it, she answered in her deposition, "Probably not." Fernandez admitted that the change in listing price she wanted was never memorialized by an addendum to the Listing Agreement signed by either her or Carmona Realty.

On cross-examination, Fernandez addressed the hurricane shutter issue. The Carmona 3 Contract with the shutters clause read, "ALL SHUTTERS WILL BE REMOVE [sic] AT CLOSING TIME." Fernandez's residence is a two-story home with removeable shutters on the first floor and accordion shutters affixed to the cement structure of the home on the second floor. Regarding the first-floor shutters, Fernandez testified she could put them on and remove them as needed. The second-floor shutters are fixtures because they are installed on the exterior of the house itself. She stated those are still on her home. The first-floor temporary shutters were taken down around Thanksgiving 2017.

On re-direct examination by Carmona Realty's counsel, counsel clarified that when one of the offers stated that they wanted the shutters taken down, they did not say "accordion" shutters but just "shutters" because they were referring to the temporary panel shutters Fernandez had on the first floor. She took the temporary shutters down during the Thanksgiving 2017 holiday and the last offer for $505,000 from Vallejo came in on December 4, 2017, after the shutters were removed. Fernandez admitted that when she was referring to herself taking the shutters down, she was referring to the temporary shutters on the first floor.

In closing, Carmona Realty argued that it brought Fernandez four offers at full price or more that met the terms of the Listing Agreement and Fernandez said no or did not answer. It contended that even if Fernandez wanted to change the terms of the Listing Agreement unilaterally, Carmona Realty was still entitled at that point to its commission because it brought a buyer to Fernandez according to the terms of the Listing Agreement. Carmona Realty argued that after Fernandez retained counsel, she went back through the Listing Agreement which she admitted not reading and was now claiming there were more reasons other than price as to why she rejected the offers. Carmona Realty argued that Fernandez thus did not preserve her objection because Florida law required that the objection be contemporaneous; Fernandez could not now create grounds after the fact to justify her actions. In addition, Carmona Realty argued the terms of the Listing Agreement did not allow oral modifications.

The court found that the contract was not modified as to price. It found that any modification or attempt to modify came after the offers were submitted, so the court was not relying on that argument. At the hearing, the court further stated:

> Each of the offers that have been submitted had one item or other that were not conforming. Whether it was the permit requirement, whether it was the shutters, whether it was the furniture – forget that one. That was not discussed – the deposits

14

to be attached, all of them varied from the terms and conditions of the listing agreement.

. . .

The FHA/VA boxes do not impose on the seller the duty to accept any financing points. In fact, the Court will point out that, in the listing agreement, Paragraph 3(c) of the contract, had it been initialed, would have obligated Ms. Fernandez to actually assume those points. In fact, it was put not applicable.

The Instructions to the agents say that the deposits must accompany or the offer will not be presented. This document was signed contemporaneously with the listing agreement. And while Mr. Carmona does not believe it binds him, it does become part of the agreement. It says specifically at the bottom, [s]he authorizes him or associates to request the documents as a condition to presenting an offer.

It was not complied with when the deposits were not attached.

. . .

Wherefore, for all of those particular reasons, the Court finds that the changes were to the listing agreement and the heart and substance of it. Judgment for the defendant.

In its Final Judgment, the trial court stated it agreed with Fernandez's third defense – that the four offers were counteroffers and did not meet the requirements of the Listing Agreement. The court noted each offer was nonconforming due to shutters, permit, furniture, or whether the deposit was attached. The court found that in reference to the Barragan offer, the FHA/VA check boxes do not impose on the seller the duty to accept any financing points. In addition, the trial court found that that the "Instructions to the

15

Agents" became part of the Listing Agreement and thus bound Carmona Realty.

Carmona Realty filed a "Motion to Rehear, Reconsider, and Vacate or Alternative Motion for New Trial" which was denied by the trial court. Carmona Realty now appeals.

## STANDARD OF REVIEW

Appellate courts review a trial court's construction of a contract and related documents under a de novo standard of review. Powertel, Inc. v. Bexley, 743 So. 2d 570, 573 (Fla. 1st DCA 1999); Ciklin Lubitz Martens & O'Connell v. Casey, 199 So. 3d 309, 310 (Fla. 4th DCA 2016).

## DISCUSSION

**I. The Instructions were not included in the Listing Agreement**

Carmona Realty first argues that the trial court erred in ruling for Fernandez because the court relied upon the Instructions, which was not included in the Listing Agreement. In Florida, "where a broker procures a customer willing, ready, and able to purchase property offered for sale according to the terms of the offer, and the transaction is defeated on account of some fault of the principal, the broker is entitled to his commission, although the transaction is not consummated." Hutchins & Co. v. Sherman, 89 So. 430, 430 (Fla. 1921). In addition, to establish a valid

contract exists, a plaintiff must allege the existence of 1) an offer; 2) acceptance of the offer; 3) consideration; and 4) sufficient specification of the essential terms of the agreement. St. Joe Corp. v. McIver, 875 So. 2d 375, 381 (Fla. 2004). Listing agreements are binding contracts. See Mark Realty, Inc. v. Rogness, 418 So. 2d 373, 375-76 (Fla. 5th DCA 1982).

When reviewing the Instructions, the third element of a contract did not exist. There is no indication in the Instructions that Carmona Realty provide anything to Fernandez, or vice-versa. Thus, the Instructions were not a valid contract.

**II. Alleged changes to the Listing Agreement, including incorporation of the Instructions into the Listing Agreement, violated Florida's Statute of Frauds, section 725.01, Florida Statutes (1998).**

Next, Carmona Realty argues that any amendments to the Listing Agreement required it to be in writing. Carmona Realty did not sign the Instructions. Section 725.01, Florida's Statue of Frauds, requires Carmona Realty's signature on the document because it is the party against whom enforcement is sought. See Cavallaro v. Stratford Homes, Inc., 784 So. 2d 619, 621 (Fla. 5th DCA 2001). Thus, in incorporating the Instructions into the Listing Agreement, the Statute of Frauds was violated.

In addition, it is true that two instruments signed by the same parties concerning the same matter and signed on or about the same time can be

merged into one agreement. See Quix Snaxx, Inc. v. Sorenson, 710 So. 2d 152, 153 (Fla. 3d DCA 1998). However, cases such as Quix Snaxx indicate that the required signatures were on both documents in question – the License Agreement and the Purchase Order Agreement. Id. at 154. Here, we have the Listing Agreement that was signed by both parties and the Instructions that were only signed by Fernandez. Furthermore, neither document referenced the other, another distinguishing point from the facts in Quix Snaxx, indicating that in the case before us, the Instructions were not incorporated into the Listing Agreement.

In addition, the Listing Agreement specifically states:

13. Miscellaneous: This Agreement is binding on Seller's and Broker's heirs, personal representatives, administrators, successors, and assigns. Broker may assign this Agreement to another listing office. **This Agreement is the entire agreement between Seller and Broker.** No prior or present agreements or representations will be binding on Seller or Broker unless included in this Agreement. Electronic signatures are acceptable and will be binding. Signatures, initials, and modifications communicated by facsimile will be considered as originals. The term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees, and other categories of potential or actual transferees.

Thus, the only contract signed by the two parties states that the only agreement between the two parties is the Listing Agreement. If the Instructions was a modification of the Listing Agreement, the Instructions

would have had to have been signed by both parties. Fernandez admitted at trial that no written amendment exists.[1]

## III. The trial court erred in incorporating or merging the Instructions into the Listing Agreement because neither the Listing Agreement nor the Instructions referenced the other, which is required by Florida's merger doctrine or doctrine of incorporation.

Carmona Realty further contends that the trial court erred in incorporating or merging the Instructions into the Listing Agreement. Carmona Realty is correct that there is a lack of reference between the Instructions and the Listing Agreement. The Instructions included the following six requests by Seller/Fernandez that she wanted contracts to have: 1) use seller's name from IMAPP; 2) the initial deposit must be 2% or $1,000.00, whichever is greater; 3) appraisal contingent; 4) property inspection attachment; 5) pre-qualification letter with lender's contact information; and 6) the previous five items attached as an "As-Is 5" contract. The Listing Agreement did not have any of these terms.

In its Final Judgment, the trial court stated:

4. Any proposed purchase contract tendered to the Seller which expressly meets all of the terms of the listing agreement is a qualifying offer which would entitle the broker to its commission. However, the evidence produced at trial showed that each and

---

[1] Carmona Realty further argues on appeal that the attempt to amend the Listing Agreement cannot be honored because the Agreement has a clause prohibiting amendment without a writing signed by the parties. They are correct, as Fernandez has admitted there is no written amendment.

19

every offer introduced into evidence at trial by Plaintiff Carmona to support his claim and which was presented to Defendant Diana Fernandez had one item or other that were not conforming. Whether it was the permit requirement, whether it was the shutters, whether it was the furniture, whether if the deposit was attached, all of them varied from the terms and conditions of the listing agreement.

In paragraph 4, the trial court incorrectly stated that the Listing Agreement was not fulfilled due to the permit removal requirements, the shutter removal requirements, or the furniture removal requirements. The trial court stated these removal requirements "varied from the terms and conditions of the listing agreement." However, the Listing Agreement contains none of these requirements regarding permit removal, shutter removal, or furniture removal.

In addition, the trial court stated in paragraph 7 that:

7. Additionally, the document entitled "Instructions to the Agents" states that the deposits must accompany or the offer will not be presented. This document was prepared by Mr. Carmona, provided to Defendant together with the listing agreement, and signed contemporaneously with the listing agreement. While Mr. Carmona does not believe it binds him, it does become part of the agreement, and this Court so finds. It says specifically at the bottom, that Ms. Fernandez authorizes him or associates to request the documents as a condition to presenting any offer. It was not complied with when the deposits were not attached in all but one of the offers at issue.

However, the Listing Agreement does not state that contracts must be accompanied by a deposit.

20

Here, the Listing Agreement makes no reference to the Instructions, and the Instructions make no reference to the Listing Agreement.

> A document *must* be considered incorporated by reference where the incorporating document specifically provides that it is subject to the incorporated document. . . . [A] document *may* be considered if it is sufficiently described or referred to in the incorporating agreement, but only for purposes of determining the intention of the contracting partes.

Hurwitz v. C.G.J. Corp., 168 So. 2d 84, 87 (Fla. 3d DCA 1964) (emphasis in original). "A mere reference to another document is not sufficient to incorporate that other document into a contract, particularly where the incorporating document makes no specific reference that it is 'subject to' the collateral document." Kantner v. Boutin, 624 So. 2d 779, 781 (Fla. 4th DCA 1993). Accordingly, because the Listing Agreement and Instructions make no reference at all to each other, the trial court erred in incorporating the Instructions into the Listing Agreement.

At trial, Fernandez argued that the shutters was the reason she did not accept the offer in the Carmona 4 Contract. However, she testified at trial that she removed the shutters around Thanksgiving 2017, which was before December 4, 2017. The date the Carmona 4 Contract was resubmitted as an offer to Fernandez. At that point, the shutters were not an issue because they had already been removed by Fernandez.

21

In addition, Fernandez was impeached in reference to her shutters testimony. At trial, Fernandez argued that the shutters clause was related to the second-floor accordion shutters attached to the exterior of her house. When confronted with her deposition testimony, she admitted that the shutters clause related to the "temporary" shutters which were the removeable shutters on the first floor. However, even if this Court were to decide that the second-floor shutters are part of the shutters clause, Fernandez never communicated to Carmona Realty that this was a reason for rejecting the Carmona 4 Contract; thus, she has waived this issue. The waiver of strict compliance with the terms of the brokerage agreement entitles the broker to their commission if the purchaser remains ready, willing, and able to buy. See Knowles v. Henderson, 22 So. 2d 384, 385 (Fla. 1945).

Regarding the deposit issue the trial court referenced in its Final Judgment, Fernandez argues the contracts did not come with a required 2% or $1,000 deposit. But as previously discussed, because it was error for the trial court to incorporate the Instructions into the Listing Agreement, the deposit was not a term of the Listing Agreement. Fernandez never asserted this deposit issue in her affirmative defenses, nor did she communicate this reason to Carmona Realty.

Fernandez signed a Listing Agreement without reading the contract, except for the terms as to the listing price and the commission due to Carmona Realty. Fernandez, thus, was unaware of her obligation to cooperate in the sale of her property and the terms included in the Listing Agreement. "A party has a duty to learn and know the contents of an agreement before signing it", and "[a]ny inquiries . . . concerning the ramifications of [the contract] should have been made before signing." Onderko v. Advanced Auto. Ins., Inc., 477 So. 2d 1026, 1028 (Fla. 2d DCA 1985.) Thus, "the failure to review and read a contract prior to its execution is not a defense to its application." Santana v. Miller, 314 So. 3d 346, 349 (Fla. 3d DCA 2020).

## CONCLUSION

The trial court improperly incorporated the Instructions into the Listing Agreement and improperly found that the furniture, shutters, and permit removal were sufficient reasons for Fernandez to reject the Carmona 4 Contract. The Carmona 4 Contract met all the terms of the Listing Agreement; thus, Carmona Realty was entitled to its fee. For these reasons, we reverse the trial court's Final Judgment and remand for the trial court to award Carmona Realty its commission.